1  Marc C. Forsythe - State Bar No. 153854
   Charity J. Miller – State Bar No. 286481
2  **GOE & FORSYTHE, LLP**
   18101 Von Karman Avenue, Suite 1200
3  Irvine, CA 92612
   mforsythe@goeforlaw.com
4  cmiller@goeforlaw.com
   Telephone:  (949) 798-2460
5  Facsimile:  (949) 955-9437

6  Attorneys for Mt Yohai, LLC
   Debtor and Debtor in Possession

7              **UNITED STATES BANKRUPTCY COURT**

8        **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

9

10                                          Case No. 8:16-bk-15157 CB

11                                          Chapter 11 Case

   In re:
12                                          **NOTICE OF MOTION AND MOTION FOR
   MT YOHAI, LLC, a Delaware liability     ORDER:**
13 company,                                 **(1) APPROVING THE PRIVATE SALE OF
                                                ASSETS OF THE ESTATE FREE AND
14         Debtor and Debtor in Possession.     CLEAR OF LIENS AND OTHER
                                                INTERESTS IF PURCHASER ACQUIRES
15                                              REAL PROPERTY IN OTHER PENDING
                                                CHAPTER 11 CASE;**
16                                          **(2) FINDING BUYER IS A GOOD FAITH
                                                PURCHASER;**
17                                          **(3) WAIVING 14-DAY STAY OF FRBP
                                                6004(h); AND**
18                                          **(4) AUTHORIZING DEBTOR TO INCUR
                                                POST-PETITION FINANCING FROM
19                                              THE PURCHASER TO PAY OFF ALL OF
                                                ITS CREDITORS (PURSUANT TO 11
20                                              U.S.C. §364)**

21                                          **MEMORANDUM OF POINTS AND
22                                          AUTHORITIES AND DECLARATIONS OF
                                            MOHIT K. AGARWAL AND MARC C.
23                                          FORSYTHE IN SUPPORT THEREOF**

24                                          <u>**Hearing Based on Order Shortening Time:**</u>
25

26                                            Date:    June 21, 2017
                                              Time:    10:00 a.m.
27                                            Place:   5D
28

**TO THE HONORABLE CATHERINE BAUER, UNITED STATES BANKRUPTCY JUDGE, AND THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that, pursuant to Local Bankruptcy Rule 6004-1, and Debtor's concurrently filed Application for an Order Shortening Time for a Hearing on this Motion, a hearing will be held on June 21, 2017 at 10:00 a.m. in Courtroom 5D at the United States Bankruptcy Court located at 411 West Fourth Street, Santa Ana, CA 92701, to consider this motion (the "Motion") filed by Debtor and Debtor-in-possession Mt Yohai, LLC, a Delaware limited liability company ("Debtor"), for the entry of an order approving the private sale of the Debtor's interests in the real property located at 2521 Nottingham Avenue, Los Angeles, CA 90027, consisting of a single family residence and improvements and more particularly described herein, including any and all improvements to such property (the "Mt. Yohai Property") to DCM P-8, LLC, a Delaware limited liability company (the "Purchaser", "Buyer" or "DMC P-8").

The purchase price of the sale of the Mt. Yohai Property is $1,793,202.10 payable pursuant to the terms and conditions of the Purchase and Sale Agreement and Escrow Instructions dated as of June 5, 2017 ("Purchase Agreement"), a true and correct copy of which is attached as **Exhibit "1"** to the Mohit K. Agarwal Declaration (the "Agarwal Dec.") and incorporated herein by this reference.

This Motion is based upon this Notice of Motion, the Motion, the Agarwal Dec., the Marc C. Forsythe Declaration (the "Forsythe Dec."), the Memorandum of Points and Authorities filed in support hereof and Debtor's Application for an Order Shortening Time for a Hearing on this Motion. After taking into account closing costs, it is estimated the estate will be paid sufficient funds to pay off all secured claims against the Mt. Yohai Property (other than the liens held by insider Kathleen Manafort, who will be waiving her claim if the sale closes), as well as all allowed or stipulated unsecured, priority and administrative claims against Debtor's estate. The sale of the Mt. Yohai Property did not involve any broker, such that no commission is owed to any broker.

The sale of the Mt. Yohai Property to DCM P-8, LLC is contingent on a related entity (DCM P-9, LLC, a Delaware limited liability company ("DCM P-9")) (the "Purchaser" or "Buyer") also acquiring through a private sale the real property located at 779 Stradella Road, Los Angeles, CA 90027 (the "Stradella Property") in U.S. Bankruptcy Court in Case No. 8:16-bk-15156-CB (the "Stradella Bankruptcy Case").  Concurrently filed with this Motion and calendared for the same hearing date and time, a similar sale motion is being filed in relation to the Stradella Property in the Stradella Bankruptcy Case.

Time is of the essence as the loan to Debtor's pre-petition lender, Genesis Capital Master Fund II, LLC ("Genesis") has matured and is in default.  Genesis has provided a payoff demand good through May 14, 2017, which includes a daily interest accruing at 12% per annum for each subsequent day after May 14, 2017 until the sale closes.  Due to the terms of financing, the sale of the Mt. Yohai Property will not close immediately, but on or before August 21, 2017.  Debtor and Genesis have also discussed and agreed to a budget for Genesis' further legal fees and costs to be incurred subsequent to Genesis' May 14, 2017 payoff demand.  The agreement between Debtor, the Purchaser and Genesis as to Genesis' legal fees and costs is only binding on Genesis if the sale to DCM P-8 closes on or before August 21, 2017.

The Property is subject to consensual liens in favor of Genesis and Kathleen Manafort, a property tax lien to Los Angeles County Treasurer and a non-consensual lien in favor of Bowery Design and Development.   If the sale of the Mt. Yohai Property and the Stradella Property close in favor of the DCM-P8 and DCM P9, respectively, Mrs. Manafort will waive her claim against the Debtor's estate.  Mrs. Manafort also has a beneficial interest in the Purchaser.

**PLEASE TAKE FURTHER NOTICE** Debtor intends to sell the Mt. Yohai Property to the Buyer subject to the Terms and Conditions of the Purchase Agreement pursuant 11 U.S.C. § 363(b), (f), and (m) (the "Sale"), which are summarized in the table below:

| Purchase Price: | Amount required to pay all existing liens: | |
|---|---|---|
| | $522,000.00 | Bowery Design and Development ("Bowery") (per Schedule D) |
| | $908,472.42 | to Genesis Capital Master Fund II, LLC as of May 14, 2017, with daily interest accruing at 12% per annum from May 14, |

|  |  |
|---|---|
|  | 2017 through the date DCM P-10 closes on the sale of the Mt. Yohai Property, which must occur prior to or on August 21, 2017. DCM P-10 believes that no further costs or late charges will be included in the payoff amount if the sale to DCM P-10 closes on or before August 21, 2017.<br><br>$ 22,681.97    to Los Angeles County Treasurer pursuant to Proof of Claim No. 1 filed on January 11, 2017.<br><br>Kathleen Manafort to release lien if sale if Mt. Yohai Property consummated to DCM P-10.<br><br>DCM P-8's offer to purchase the Mt. Yohai Property is contingent on DCM P-9 being the successful purchaser of the Stradella Property in the Stradella Bankruptcy Case. |
| No Overbid: | The Sale is a private sale and is not subject to overbid. |
| Commission: | No commission is owed, as no broker has been involved in this transaction. |
| Representation & Warranties: | The Mt. Yohai shall be sold on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor, except to the extent expressly set forth in the Purchase Agreement. |
| Treatment of Liens: | The Property shall be sold, subject to approval by Order of the Bankruptcy Court entered after the approval of the sale by this Court, free and clear of all liens and claims. |
| Personal Property: | The Purchase Agreement includes a sale of all of the estate's interest in any fixtures, equipment and personal property of any type located at the Stradella Property. |
| Title: | Title to the Mt. Yohai Property shall be delivered free and clear of all existing mortgages and other liens; subject to Genesis' consent right in the event sale will not pay Genesis in full. |
| Closing Date and Effect of Not Closing: | DCM P-8 must close the purchase of the Mt. Yohai Property no later than August 21, 2017. If DCM P-8 does not close timely, then Debtor shall immediately file and seek prompt approval of a stipulation – in a form agreed to by Genesis - for the dismissal the Debtor's bankruptcy case. |
| Payment to Genesis Upon Court Approval of Sale: | Within 3 (three) business day of entry of an Order approving the Mt. Yohai Property sale to DCM P-8, DCM P-8 shall commence monthly adequate protection payments to Genesis at the rate of 12% per annum on Genesis' outstanding pre-petition claim until closing.<br><br>If DCM P-8 closes on the Mt. Yohai Property sale on or before August 21, |

| | |
|---|---|
| | 2017, the Debtor's bankruptcy case will remain open in order to pay all other allowed or stipulated claims related thereto.  Concurrently with this Motion, DCM P-8 will also seek authority to provide a non-recourse loan to Debtor to pay all creditors therein, pursuant to 11 U.S.C. Section 364. |
| Conditions to Closing: | Closing of the Mt. Yohai Property sale will be subject to customary conditions, including the following:<br><br>(1)  Bankruptcy court approval of the Mt. Yohai Property sale; and<br><br>(2)  After the close of the Mt. Yohai Property sale, dismissal of the Debtor's bankruptcy case affecting the Mt. Yohai Property, or exclusion of the Mt. Yohai Property from the bankruptcy case.<br><br>(3) No material change to the Mt. Yohai Property shall have occurred prior to the closing of the Mt. Yohai Property sale without the prior written consent of DCM P-8. |

**PLEASE TAKE FURTHER NOTICE** that Debtor requests that the sale be made free and clear of all liens and other interests in the Mt. Yohai Property pursuant to § 363(f)(2), (4).

**PLEASE TAKE FURTHER NOTICE** that the Debtor requests the Court make a finding that the Purchaser is a good faith purchaser pursuant to 11 U.S.C. § 363(m).

**PLEASE TAKE FURTHER NOTICE** that Debtor requests that the Court waive the 14-day stay as set forth in Bankruptcy Rule 6004(h).

**PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(f) provides each interested party opposing or responding to the Motion must file and serve the response on the Debtor and the Office of the United States Trustee not later than the date designated for hearing on the Motion as set forth in the Order on Debtor's Application for an Order Shortening Time for a hearing on this Motion, which will be separately served on all parties with this Motion.

**PLEASE TAKE FURTHER NOTICE** Debtor is requesting authorization to incur post-petition financing from the Purchaser to pay off all of its creditors (pursuant to 11 U.S.C. §364).

Dated:  June 5, 2017                              GOE & FORSYTHE, LLP

                              By:    /s/ Marc C. Forsythe
                                     Marc C. Forsythe
                                     GOE & FORSYTHE, LLP
                                     Attorneys for Debtor

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION  AND STATEMENT OF FACTS

The proceeds from the proposed Mt. Yohai Property sale to DCM P-8 will result in the payment of all secured claims against the Mt. Yohai Property (excluding an insider lien which will be waived if the sale closes), and all other allowed or stipulated claims against the Debtor.  If the proceeds from the sale are insufficient to pay all other allowed or stipulated claims against the Debtor, DCM P-8 will provide a non-recourse loan to Debtor to pay such allowed or stipulated claims.  After the sale is closed, Debtor will seek to dismiss this bankruptcy case.

### A.    The Debtor, the Property, the Secured Debt, the Purchaser and the Proposed Purchase Terms.

The Debtor is a Delaware limited liability company in good standing and authorized to do business in the State of California.  Debtor was formed to develop real estate.  The Mt. Yohai Property is the Debtor's only asset.  The Mt. Yohai Property was purchased on May 22, 2015 with a short term, non-recourse loan from Genesis.  Debtor intended to refinance the debt to Genesis with construction financing, but was unable to timely do so.  As a result, this bankruptcy case was filed on December 21, 2016, shortly before a pending foreclosure sale.  Since the filing of this bankruptcy case, Debtor has been analyzing its options to either obtain post-petition financing to take out Genesis, enter into a consensual loan modification with Genesis, or sell the Mt. Yohai Property to a third party.

The proceeds from the proposed purchase will result in the payment of all non-insider secured claims (Bowery, Genesis and the Los Angeles County Treasurer), with Mrs. Kathleen Manafort waiving her secured claim if the sale to DCM P-8 closes.  DCM P-8 will also provide a non-recourse loan to the Debtor for sufficient funds to pay all allowed or stipulated unsecured and administrative claims.  The sale of the Mt. Yohai Property to DCM P-8 is contingent on this Court approving the sale to another related entity, DCM P-9, of the Stradella Property in the Stradella Bankruptcy Case.  Concurrently filed with this Motion and calendared for the same hearing date and time, a similar sale motion is being filed in relation to the Stradella Property in the Stradella Bankruptcy Case.  As agreed to by Genesis, if the sales of the Stradella Property and the Mt. Yohai Property are approved

by this Court, then DCM P-8 and DCM P-9 will have until on or before August 21, 2017 to close such sales.  Genesis will be paid interest at 12% per annum commencing three (3) days after an order is entered approving this Motion, with the first payment due in advance ten (10) days after an order is entered approving this Motion and any subsequent interest payment due thirty (30) days after the first payment.

A true and correct copy of the Purchase Agreement is attached as **Exhibit "1"** to the Agarwal Declaration and incorporated herein by this reference.

## B.   As All Creditors Will Be Paid, Debtor and DCM P-8 Believe a Private Sale is Justified.

Debtor has the right to determine how the Mt. Yohai Property is sold when all of its creditors will be paid in full.  The proceeds from the proposed sale to DCM P-8 will result in the payment of all secured claims against the Mt. Yohai Property (excluding an insider lien which will be waived if the sale closes) and all other allowed or stipulated claims against the Debtor.  If the proceeds from the sale are insufficient to pay all other allowed or stipulated claims against the Debtor, DCM P-8 will also provide a non-recourse loan to the Debtor to pay such allowed or stipulated claims. After the sale is closed, Debtor will seek to dismiss this bankruptcy case.

## C.   There Are No Adverse Tax Consequences of the Sale.

Because the Debtor is a limited liability company, there are no adverse tax consequences to the estate arising from the Sale.

## II.   ARGUMENT

By way of this Motion, Debtor requests the entry of an order (1) authorizing Debtor to sell the Mt. Yohai Property free and clear of liens and other interests to Buyer, pursuant to 11 U.S.C. § 363(b), (f), and (m); (ii) finding the Purchaser to be a good faith purchaser as described in 11 U.S.C. § 363(m), (iii) waiving the 14-day stay set forth in Bankruptcy Rules 6004(h); and (iv) authorizing Debtor to incur post-petition financing from the Purchase to pay off all of its creditors (pursuant to 11 U.S.C. §364).

### A.    The Sale Should Be Approved Pursuant to 11 U.S.C. § 363(b)

Section 363(b) of the Bankruptcy Code provides that after a notice and a hearing, a trustee or debtor in possession may sell property of the estate outside the ordinary course of business.  11 U.S.C. §§ 363(b) and 1107(a).

In determining whether to approve a proposed sale under section 363, courts generally apply standards that, although stated various ways, represent essentially a business judgment test. 3-363 Collier on Bankruptcy ¶ 363.02[4].  "Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection."  In re Lahijani, 325 B.R. 282, 289 (BAP 9th Cir. 2005).  The bankruptcy court reviews the trustee's business judgment only "to determine independently whether the judgment is a reasonable one.  The court should not substitute its judgment for the trustee's but should determine only whether the trustee's judgment was reasonable and whether a sound business justification exists supporting the sale and its terms." 3-363 Collier on Bankruptcy ¶ 363.02[4].

An additional consideration when approving a sale of assets of the estate is that such sale is in the "best interests of the estate".  (In re Wilde Horse Enters., Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal 1991); In re Lionel, 722 F. 2d 1063, 1070 (2nd Cir. 1983). While subjecting the sale to an overbid procedure may ordinarily be the manner of sale which is most likely to obtain the highest and best price for the property, and thus in the best interests of the estate, it is not always a necessary component to such a sale. Rather, the assessment of whether a sale is in the best interests of creditors involves an analysis of all of the factors involved in the sale, including alternatives available to the estate for disposition of the property.

Rule 6004(f)(1) provides that sales outside the ordinary course of business may be by private sale or by public auction.  It is within the discretion of the trustee to determine whether a public auction or private sale is appropriate.  In re Alisa Partnership, 15 B.R. 802 (Bankr. D. Del. 1981); see also Fed. R. Bankr. Proc. 6004(f); 11 U.S.C. § 363(b)(1).  Generally, "[t]here is no prohibition against a private sale or against a sale to insiders; and there is no requirement that the sale be by public auction."  In re Woodscape Ltd. Partnership, 134 B.R. 165, 174 (Bankr. D. Md. 1991)

(discussing the sale of equity in a chapter 11 plan); see also In re Andy Frain Services, Inc., 798 F.2d 1113, 1125 (7th Cir. 1986) (a sale to an insider is not per se bad faith).

In the context of private sales to an insider, it is "well established that, even when the purchaser is an insider, the bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)." In re Apex Oil Co., 92 B.R. 847, 870 (Bankr. E.D. Mo. 1988) (quoting In re Ancor Exploration Co., 30 B.R. 802, 808 (N.D. Okla. 1983)). Each sale must be examined from its own facts to determine whether approval is justified and the bankruptcy court should make the following specific findings supported by the record:

> 1) Whether there are facts constituting an emergency or in the absence of a demonstrated emergency, whether there are compelling facts and circumstances which support approval of the sale, be it public or private;
>
> 2) If the trustee has not solicited other prospective purchasers, private or public, whether there are facts that justify the trustee not doing so; and
>
> 3) Whether the sale, private or public, is in the best interests of the debtor estate when the consideration paid and all other relevant factors are taken into account.

Ancor Exploration, 30 B.R. at 808.

As noted in ¶ 3 of the Forsythe Dec., Mrs. Manafort's interest in the Purchaser, however, is irrelevant in this case as all secured and allowed claims against the Debtor will be paid, so no adverse consequences can arise by this insider's interest in the Purchaser.

As discussed herein, all of the elements are met as the proceeds from the proposed Mt. Yohai Property sale to DCM P-8 will result in the payment of all secured claims against the Mt. Yohai Property (excluding an insider lien which will be waived if the sale closes) and all other allowed or stipulated claims against the Debtor. After the sale is closed, Debtor will seek to dismiss this bankruptcy case.

**B.    The Sale Should Be Free and Clear of Liens and Other Interests Pursuant to 11 U.S.C. § 363(f)(2)**

Section 363(f)(2) provides that a sale of property pursuant to section 363(b) may be free and clear of any interest if such entity consents. 11 U.S.C. § 363(f)(2). Genesis has consented, and Bowery and the Los Angeles County Treasurer will be paid in full.

### C.    The Buyer is a Good Faith Purchaser Pursuant to 11 U.S.C. § 363(m)

Section 363(m) provides that a purchaser of property of the estate is protected from the effects of a reversal or modification on appeal of the authorization to sell as long as the purchaser acted in good faith and the appellant failed to obtain a stay of the sale.  The Code does not define "good faith."  Courts have adopted various definitions.  A good faith purchaser is "one who buys property . . . for value, without knowledge or adverse claims."  In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 8 (1st Cir. 1993).  "Typically, lack of good faith is shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  In re Ewell, 958 F.2d 276, 279 (9th Cir. 1992).

The Ninth Circuit has held that there is a presumption of good faith in favor of a buyer in a sale under 11 U.S.C. 363(m) in its decision in In re Cooper Commons, LLP., 424 F3d 963, 970 (9th Cir. 2005). In Cooper Commons, the court noted that, as explained in In re Adams Apple, 829 F2d 1484, 1489 (9th Cir. 1987), in connection even with a sale to a creditor under Section 363(m), the court presumes the buyer's good faith and then inquires as to whether the presumption can be overcome. See In re Zuercher Trust of 1999, 2014 Bankr. Lexis 5061 (BAP 9th Cir. 2014)

While the Buyer in this case is a company in which Mrs. Manafort has a beneficial interest, this does not rebut the presumption that the Buyer is a good faith buyer for purposes of Section 363(m). The proceeds from the proposed sale to DCM P-8 will result in the payment of all secured claims against the Mt. Yohai Property (excluding an insider lien which will be waived if the sale closes) and all other allowed or stipulated claims against the Debtor.  If the proceeds from the sale are insufficient to pay all other allowed or stipulated claims against the Debtor, DCM P-8 will also provide a non-recourse loan to the Debtor to pay such allowed or stipulated claims.  After the sale is closed, Debtor will seek to dismiss this bankruptcy case.  The sale price provides substantial value to the estate which evidences that it was made in good faith, as do all the other conditions of the purchase.

### D.    The Court Should Waive the 14-Day Stay Set Forth in Bankruptcy Rules 6004(h)

Bankruptcy Rule 6004(h) provides that an order authorizing the sale of property is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise.  Absent any

1    objection to the Motion, Debtor requests that the 14-day stay set forth in Bankruptcy Rule 6004(h)

2    be waived as the Buyer desires to move forward as soon as possible to close the Mt. Yohai Property

3    sale on or before August 21, 2017, as interest at 12% per annum will continue to accrue until

4    closing.

5    **E.    COURT APPROVAL OF THE NEW FINANCING IS WARRANTED UNDER**

6    **SECTION 364 (b).**

7    Section 364 (b) of Bankruptcy Code empowers a bankruptcy court to authorize a debtor to obtain

8    unsecured post-petition financing that may be entitled to administrative priority:

9

10    (b) The court, after notice and a hearing, may authorize the trustee
      to obtain unsecured credit or to incur unsecured debt other than
      under subsection (a) of this section, allowable under section
11    503(b)(1) of this title as an administrative expense.
      *See also* Federal Rule of Bankruptcy Procedure 4001(c)
12    (authorizing court to approve consensual arrangements for the
      obtaining of credit by a debtor contemplated by Bankruptcy Code
13    § 364.)

14    The Sixth Circuit Court of Appeals, in In re Ellingsen MacLean Oil Co., Inc., 834 F.2d 599 (6th

15    Cir. 1987), cert. denied, 488 U.S. 817, 109 S. Ct. 55, 102 L. Ed. 2d 33 (1988) succinctly stated the

16    purpose of Section 364 as follows:

17

18    There are countervailing strong policy reasons to encourage creditors to
      extend additional post-petition credit to debtors.  Chapter 11 envisions the
19    continued operation of a debtor's business, but the need for fresh capital and
      difficulties in obtaining the capital and wherewithal to run a business are
20    obvious.  Lenders and suppliers are understandably reluctant to do business
      with a debtor who is in bankruptcy and who may have few, if any,
21    unencumbered assets to offer as collateral.  Section 364 is designed to
      encourage post-petition financing by authorizing security in the debtor's
22    assets and giving the lender priority over administration costs.

23    Id. at 603.

24    As discussed herein, Debtor requires the non-recourse loan from DCM P-8 to pay off all other

25    allowed or stipulated claims against the Debtor.  If the proceeds from the sale are insufficient to pay

26    all other allowed or stipulated claims against the Debtor, DCM P-8 will provide a non-recourse loan

27    to the Debtor to pay such allowed or stipulated claims.  After the sale is closed, Debtor will seek to

28    dismiss this bankruptcy case.

### III. <u>**CONCLUSION**</u>

In conclusion, the proceeds from the proposed sale to DCM P-8 will result in the payment of all secured claims against the Mt. Yohai Property (excluding an insider lien which will be waived if the sale closes), and all other allowed or stipulated claims against the Debtor. After the sale is closed, Debtor will seek to dismiss this bankruptcy case.

**WHEREFORE,** Debtor respectfully requests that the Court enter an order:

1. Granting the Motion in its entirety;

2. Authorizing Debtor to sell the Mt. Yohai Property pursuant to the terms of the Purchase Agreement;

3. Authorizing the sale of the Mt. Yohai Property to be free and clear of Bowery, Genesis, Los Angeles County Treasurer and Kathleen Manafort liens pursuant to 11 U.S.C. § 363(f)(2);

4. Finding that the Purchaser is a good faith purchaser pursuant to 11 U.S.C. § 363(m);

5. Waiving the 14-day stay set forth in Bankruptcy Rule 6004(h);

6. In the event the proceeds from the sale are insufficient to pay all other allowed or stipulated claims against the Debtor, authorizing Debtor to incur an unsecured, non-recourse loan from DCM P-8 to pay such allowed or stipulated claims; and

7. Affording such other and further relief as is appropriate under the circumstances.

Dated:  June 5, 2017                    GOE & FORSYTHE, LLP


                              By:    */s/ Marc C. Forsythe*
                                    Marc C. Forsythe
                                    GOE & FORSYTHE, LLP
                                    Attorneys for Debtor

## DECLARATION OF MOHIT K. AGARWALL

I, Mohit K. Agarwal, declare and state:

1.    I am the managing member of DCM P-8, a Delaware Limited Liability Company ("Purchaser", "Buyer" or "DCM P-8").  I make this declaration in support of Debtor's *Motion for Order: (1) Approving the Private Sale of Assets of the Estate Free and Clear of Liens and Other Interests if Purchaser Acquires Real Property in Other Pending Chapter 11 Case; (2) Finding Buyer is a Good Faith Purchaser; (3) Waiving 14-Day Stay of FRBP 6004(h); and (4) Authorizing Debtor to Incur Post-Petition Financing From the Purchaser to Pay Off All of Its Creditors (Pursuant to 11 U.S.C. § 365* ("Motion").  The facts set forth herein are personally known to me and, if called as a witness, I could and would testify thereto.

2.    The proceeds from the proposed purchase will result in the payment of all non-insider secured claims (Bowery, Genesis and the Los Angeles County Treasurer), with Mrs. Kathleen Manafort waiving her secured claim if the sale to DCM P-8 closes.  DCM P-8 will also provide a non-recourse loan to the Debtor for sufficient funds to pay all allowed or stipulated unsecured and administrative claims.  The sale of the Mt. Yohai Property to DCM P-8 is contingent on this Court approving the sale to another related entity, DCM P-9, of the Stradella Property in the Stradella Bankruptcy Case.  Concurrently filed with this Motion and calendared for the same hearing date and time, a similar sale motion is being filed in relation to the Stradella Property in the Stradella Bankruptcy Case.  As agreed to by Genesis, if the sales of the Stradella Property and the Mt. Yohai Property are approved by this Court, then DCM P-8 and DCM P-9 will have until on or before August 21, 2017 to close such sales.  Genesis will be paid interest at 12% per annum commencing three (3) days after an order is entered approving this Motion, with the first payment due in advance ten (10) days after an order is entered approving this Motion and any subsequent interest payment due thirty (30) days after the first payment.  A true and correct copy of the Purchase Agreement is attached hereto as **Exhibit "1"** and incorporated herein by this reference

/ / /

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

        Executed on this _____ day of June, 2017 at Irvine, California.

_____

Mohit K. Agarwal

### DECLARATION OF MARC C. FORSYTHE

I, Marc C. Forsythe, declare and state:

1.      I am a partner of Goe & Forsythe, LLP, counsel to Mt Yohai, LLC, the Debtor herein.  I make this declaration in support of Debtor's *Motion for Order: (1) Approving the Private Sale of Assets of the Estate Free and Clear of Liens and Other Interests if Purchaser Acquires Real Property in Other Pending Chapter 11 Case; (2) Finding Buyer is a Good Faith Purchaser; (3) Waiving 14-Day Stay of FRBP 6004(h); and (4) Authorizing Debtor to Incur Post-Petition Financing From the Purchaser to Pay Off All of Its Creditors (Pursuant to 11 U.S.C. § 365* ("Motion").  The facts set forth herein are personally known to me and, if called as a witness, I could and would testify thereto.

2.      The Debtor is a Delaware limited liability company in good standing and authorized to do business in the State of California.  Debtor was formed to develop real estate.  The Mt. Yohai Property is the Debtor's only asset.  The Mt. Yohai Property was purchased on May 22, 2015 with a short term, non-recourse loan from Genesis.  Debtor intended to refinance the debt to Genesis with construction financing, but was unable to timely do so.  As a result, this bankruptcy case was filed on December 21, 2016, shortly before a pending foreclosure sale.  Since the filing of this bankruptcy case, Debtor has been analyzing its options to either obtain post-petition financing to take out Genesis, enter into a consensual loan modification with Genesis, or sell the Mt. Yohai Property to a third party.

3.      Based on my conversations with the purchaser and the Debtor, secured creditor Kathleen Manafort will waive her claim against the Mt. Yohai Property and the Debtor if the sales of both the Stradella Property and the Mt. Yohai Property to DCM-8 and DCM-9, respectively, are approved by this bankruptcy court.  Mrs. Manafort will have a beneficial interest in the purchaser, which is irrelevant as all secured creditors are being paid and all other creditors their allowed claims.

4.      As discussed herein, all of the elements are met as the proceeds from the proposed Mt. Yohai Property sale to DCM P-8 will result in the payment of all secured claims against the Mt. Yohai Property (excluding an insider lien which will be waived if the sale closes) and all other allowed or stipulated claims against the Debtor.  After the sale is closed, Debtor will seek to dismiss

1 | this bankruptcy case.

2 |      I declare under penalty of perjury under the laws of the United States of America that the

3 | foregoing is true and correct.

4 |      Executed on this 5th day of June, 2017 at Irvine, California.

5 |

6 |      /s/Marc C. Forsythe
     Marc C. Forsythe

7 |

# EXHIBIT 1

# EXHIBIT 1

# PURCHASE AND SALE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS

THIS PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("Agreement") is entered into as of the 5th day of June, 2017 (the "Effective Date"), by and between Mt Yohai, LLC, a Delaware limited liability company ("Seller"), debtor-in-possession in U.S. Bankruptcy Court Case No. 8:16-bk-15157-CB ("Bankruptcy Case") and DCM P-8, LLC, a Delaware limited liability company, or its assignee ("Buyer").

## RECITALS

A.     Seller is the owner of that certain real property with improvements consisting of 2.6 acres of vacant land located at 2521 Nottingham Avenue, Los Angeles, California, and more particularly described on Exhibit "A" attached hereto and incorporated herein by this reference (the "Real Property").

B.     Buyer desires to purchase from Seller and Seller desires to sell to Buyer the Real Property, Personal Property, Intangible Property and Contracts (as defined herein), and collectively referred to as the "Property").

NOW, THEREFORE, for the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows.

## SECTION 1
### Certain Definitions

In addition to other terms defined elsewhere in this Agreement, the following terms will be defined as follows.

1.1.     "SALE APPROVAL DATE."

The proposed hearing date for approval of the private sale of the Real Property by the bankruptcy court is June 7, 2017.

1.2.     "CLOSING" OR "CLOSING DATE."

The proposed closing date for the transaction contemplated by this Agreement in the event Buyer is the successful bidder at the Auction is August 21, 2017.

1.3.     "DUE DILIGENCE PERIOD."

The period of time within which Buyer shall conduct its inspections of the Property, starting on the Effective Date and ending at midnight pacific daylight time on August 14, 2017.

EXHIBIT "1"

1.4. "ESCROW HOLDER."

First American Title Company.

1.5. "GENESIS."

Genesis Capital Master Fund II, LLC, a Delaware limited liability company, a California finance lender.

1.6. "PURCHASE PRICE."

One Million Seven Hundred Ninety-Three Thousand Two Hundred Two Dollars and Ten Cents ($1,793,202.10), the amount required to pay all creditors in full.

## SECTION 2
### Purchase and Sale

Upon and subject to the terms and conditions set forth in this Agreement, Seller agrees to sell to Buyer and Buyer agrees to buy from Seller: (a) the Real Property, together with all improvements, easements, water rights, if any, hereditaments and appurtenances thereto; (b) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property upon, attached or appurtenant to or used in connection with, the ownership, operation and maintenance of the Real Property ("Personal Property"); (c) all of Seller's right, title and interest, if any, in and to all intangible property relating to the Real Property or the Personal Property in the possession or control of Seller, including, without limitation, all trademarks, trade names, licenses, permits, approvals, authorizations, and other entitlements, all guaranties and warranties related to the Real Property and/or the Personal Property, and all studies, books, records, reports, test results, environmental assessments, and other documents and materials related to the Real Property (the "Intangible Property"); and (d) all other agreements and all other assignable permits regarding the Property, including, without limitation, all plans, maps, permits, drawings, architectural rendering, designs and floor plans, elevations, budgets, proformas, and entitlements (the "Contracts"); including without limitation tentative maps, final maps, building permits, utility extension or construction agreements, utility refund agreements, potable water and reclaimed water will-serve commitments and agreements regarding the dedication of water rights and other water-related matters, if any, water discharge permits, special use permits, development agreements, PUD agreements, and HOA agreements.

## SECTION 3
### Purchase Price: Payments

The Purchase Price for the Property shall be paid as follows:

3.1. PAYMENT OF PURCHASE PRICE.

Within one (1) business day of the Closing Date, Buyer shall deliver to the Escrow Holder the Purchase Price, plus any other sums necessary to close, in the form of confirmed wire transfer of funds or other immediately available funds.

3.2. DEBT SERVICE PAYMENTS.

Within three (3) business days of entry of the Order Approving the Sale of the Real Property to Buyer herein in the Bankruptcy Case, Buyer shall pay to Genesis an amount equal to 12% interest per annum on its outstanding pre-petition claim each month until Closing (each, an "Interest Payment").

## SECTION 4
### Representations and Warranties

4.1.    SELLER'S REPRESENTATIONS.

Seller represents and warrants to Buyer as of the Effective Date and as of the date of Closing as follows.

(a)    Seller is a duly formed and validly existing Delaware limited liability company and in good standing pursuant to the laws of the State of California and has the full power, authority and legal right to execute and deliver and perform under this Agreement.

(b)    The execution and delivery of this Agreement, the consummation of the transactions provided for herein and the fulfillment of the terms hereof on the part of Seller will not result in a breach of any instrument to which Seller is a party or by which Seller is bound or of any judgment, decree or order of any court or governmental body or any law, rule or regulation applicable to Seller.

(c)    The execution, delivery and performance of this Agreement by the persons executing the same on behalf of Seller have been duly and validly authorized (and by their execution hereof such persons individually represent and warrant that they are so authorized) and this Agreement and the other agreements and instruments contemplated hereby constitute legal, valid and binding obligations of Seller, enforceable in accordance with their respective terms.

(d)    Except for the approval of the Bankruptcy Court in the Bankruptcy Case, no consent, approval or authorization of any governmental authority or private party is required in connection with the execution, delivery and performance of this Agreement by Seller.

4.2.    BUYER'S REPRESENTATIONS.

Buyer represents and warrants to Seller as of the Effective Date and as of the date of Closing as follows.

(a)    Buyer is a duly formed and validly existing limited liability company in good standing pursuant to the laws of the State of Delaware and has the full power, authority and legal right to execute and deliver and perform under this Agreement.

(b)    The execution and delivery of this Agreement, the consummation of the transactions provided for herein and the fulfillment of the terms hereof on the part of Buyer will not result in a breach of any instrument to which Buyer is a party or by which Buyer is bound or of any judgment, decree or order of any court or governmental body or any law, rule or regulation applicable to Buyer.

(c)    The execution, delivery and performance of this Agreement by the persons executing the same on behalf of Buyer have been duly and validly authorized (and by their execution hereof such persons individually represent and warrant that they are so authorized) and this Agreement and the other agreements and instruments contemplated hereby constitute legal, valid and binding obligations of Buyer, enforceable in accordance with their respective terms.

(d)    Except for the approval of the Bankruptcy Court in the Bankruptcy Case, no consent, approval or authorization of any governmental authority or private party is required in connection with the execution, delivery and performance of this Agreement by Buyer.

4.3.    RELIANCE.

The representations and warranties contained herein are made with the knowledge and expectation that Buyer and Seller, as the case may be, are placing complete reliance thereon.

4.4.    SURVIVAL.

The representations and warranties contained herein shall survive the Closing, provided, however, that all such representations and warranties shall expire one (1) year after the Closing except with respect to violations alleged in writing within such period.

**SECTION 5**
Deliveries to Escrow Holder

5.1.    BY SELLER.

On or prior to the Closing Date, Seller shall deliver or cause to be delivered to Escrow Holder the following items:

(a)    A Grant, Bargain, Sale Deed ("Deed"), substantially in the form attached to this Agreement as Exhibit "B" and incorporated herein, duly executed and acknowledged by Seller and in recordable form, conveying the Property to Buyer.

(b)    A State of California Declaration of Documentary Transfer Tax showing the real property transfer tax due, duly executed by Seller.

(c)    A Transferor's Certificate of Non-Foreign Status, duly executed by Seller.

(d)    An Assignment and Bill of Sale conveying title to the Personal Property, the Intangible Property and the Contracts to Buyer, duly executed by Seller.

(e)    Any other documents required by this Agreement to be delivered by Seller to Escrow Holder.

(f)    Possession of the Property.

5.2.    BY BUYER.

On or prior to the Closing Date, Buyer will deliver or cause to be delivered to Escrow Holder the following items:

(a)    The Purchase Price plus any other sums necessary to close, in the form of wire transfer or other immediately available funds.

(b)    A State of California Declaration of Documentary Transfer Tax showing the real property transfer tax due, duly executed by Buyer.

(c)    Any other documents required by this Agreement to be delivered by Buyer to Escrow Holder.

(d)    Evidence reasonably acceptable to Seller that the documents delivered by Buyer to Seller at Closing have been duly authorized by Buyer, duly executed on behalf of Buyer, and when delivered constitute valid and binding obligations of Buyer.

5.3.    BY BUYER AND SELLER.

Buyer and Seller will each deposit such other instruments as are reasonably required by Escrow Holder or otherwise required to close Escrow.  Seller and Buyer hereby designate the Escrow Holder as the "Reporting Person" for the transaction pursuant to Section 6045(e) of the Internal Revenue Code.

## SECTION 6
### Conditions to the Close Of Escrow

6.1    CONDITIONS PRECEDENT TO BUYER'S OBLIGATIONS.

The following conditions must be satisfied not later than the Closing Date or such other period of time as may be specified below and, as such, are conditions precedent to Buyer's obligations under Section 6.2:

(a)    The Motion to Approve the Sale of the Real Property scheduled for June 21, 2017, shall have been granted by the bankruptcy court in the Bankruptcy Case.

(b)    Seller will have duly performed each and every agreement to be performed by Seller hereunder in all material respects and Seller's representations, warranties and covenants set forth in this Agreement will be true and correct as of the Closing Date in all material respects.

(c)    Seller will have delivered the items described in Section 5.1.

(d)    As of the Closing, Escrow Holder will issue, or will have irrevocably committed to issue, the Title Policy to Buyer.

(e)    The Bankruptcy Case shall be dismissed or the Real Property shall be excluded from the Bankruptcy Case.

(f)    No material change to the Real Property shall have occurred after the date of this Agreement and prior to the Close of Escrow without the prior written consent of Buyer.

The conditions set forth in this Section 5.1 are solely for the benefit of Buyer and may be waived only by Buyer.  At all times Buyer has the right to waive any such condition.  Such waiver or waivers must be in writing to Seller.

6.2.    CONDITIONS PRECEDENT TO SELLER'S OBLIGATIONS.

The following conditions must be satisfied not later than the Closing Date or such other period of time as may be specified below and, as such, are conditions precedent to Seller's obligations under Section 6.1:

(a)    The Motion to Approve the Sale of the Real Property scheduled for June 21, 2017, shall have been granted by the bankruptcy court in the Bankruptcy Case.

(b)    Buyer will have duly performed each and every agreement to be performed by Buyer hereunder in all material respects and Buyer's representations, warranties and covenants set forth in this Agreement will be true and correct as of the Closing Date in all material respects.

(b)      Buyer shall have delivered to Escrow Holder the items described in Section 5.2.

The conditions set forth in this Section 5.2 are solely for the benefit of Seller and may be waived only by Seller.  At all times Seller has the right to waive any such condition.  Such waiver or waivers must be in writing to Buyer.

## SECTION 7
### Due Diligence Period

7.1.    INVESTIGATIONS.

Buyer shall have the right, at any time up to and including the day on which the Due Diligence Period is to expire, to terminate this Agreement for any reason in Buyer's sole discretion upon written notice delivered to Seller and Escrow Holder prior to expiration of the Due Diligence Period.  During this time, Buyer may, if Buyer chooses to do so, investigate any matters related to the Property in Buyer's discretion.  Seller agrees to provide Buyer with copies of all documents, plans and permits, including any environmental inspections, provided that such documents are in Seller's actual possession or control.  If Buyer desires to terminate this Agreement, then Buyer shall deliver to Seller a written notice terminating this Agreement (the "Termination Letter"), which must be received by Seller by not later than 5:00 p.m. Pacific Time on the date of the expiration of the Due Diligence Period.  If Seller timely receives the Termination Letter, then this Agreement shall terminate, in which case neither party shall have any further rights or obligations hereunder except as otherwise set forth herein.  Failure to deliver the Termination Letter by such time shall result in Buyer being obligated to proceed with the Closing on its purchase of the Property and comply with all obligations of Buyer under this Agreement.

7.2.    ACCESS.

Buyer, Buyer's employees and representatives, will be afforded reasonable access to the Property upon reasonable notice to Seller for the purposes of conducting an investigation of the Property.  Buyer covenants and agrees to indemnify and hold Seller harmless from all losses, damages, liabilities, actions, suits, proceedings, claims, demands, assessments, judgments, costs, and expenses, including reasonable attorneys' fees, arising from Buyer's entry upon the Property.  This Section 7.2 shall survive the Closing or sooner termination of this Agreement.

## SECTION 8
### Property "As-Is/Where-Is"

8.1.    AS-IS/WHERE-IS PURCHASE.

Buyer agrees that the Property is to be sold to and accepted by Buyer at the Closing in its then condition and in its then location, "AS-IS/WHERE-IS," and with all faults, if any.  No person acting on behalf of Seller is authorized to make, and by execution hereof, Buyer acknowledges that no person has made, any representation, agreement, statement, warranty, guarantee, or promise regarding the Property or the transaction contemplated herein or the zoning, construction, physical condition, or other status of the Property except as may be expressly set forth in this Agreement.  Seller shall have no liability to Buyer for the accuracy or completeness of any information provided to Buyer by Seller relating to the Property.

8.2.    NO REPRESENTATIONS OR WARRANTIES.

Except as expressly stated herein, Seller makes no representation or warranty, express or implied, with respect to the Property.  No representation, warranty, agreement, statement, guaranty, or promise, if any, made

by any person acting on behalf of Seller which is not contained in this Agreement will be valid or binding on Seller.

## SECTION 9
### Title

10.1    Title Report. Escrow Holder shall coordinate with Title and deliver to Buyer a preliminary title report or commitment (the "Title Report") and a copy of all recorded documents for which exception shall be taken and shall use its best efforts to deliver such Title Report within five (5) days following the opening of Escrow.

10.2    Approval of Exceptions. Buyer shall have the right to object to any fact, condition, requirement or exception set forth in the Title Report other than as might be disclosed by a current land title survey of the property, upon written notice (a "Notice of Objection") given to Seller no later than Fifteen (15) days prior to expiration of the Due Diligence Period. Subject to the remaining provisions of this Section 10.2, Buyer shall be deemed to have accepted any fact, condition, requirement or exception reflected in the Title Report for which no Notice of Objection shall have been timely given. Seller shall have the right, in its sole and absolute discretion and upon written notice to Buyer given no later than Ten (10) days from and after the date any Notice of Objection shall have been received by Seller (a "Title Reply Period"), within to agree to cure any title objection properly noticed by Buyer. Seller shall be deemed to have refused to satisfy or cure, as the case may be, any and each fact, condition, requirement and/or exception so noticed by Buyer for which no such notice of cure (a "Notice of Cure") shall have been given.

10.3    Termination of Agreement. If Seller shall not give Notice of Cure with respect to each fact, condition, requirement or exception which is the subject of any property Notice of Objection, Buyer thereupon shall have the right in the sole and absolute discretion of Buyer and as Buyer's sole remedies hereunder to elect either (i) to terminate this Agreement as described in Section 7.1 or (ii) to accept title to the Property in such condition as Seller can convey and proceed to close of Escrow hereunder without any claim against Seller on account of the existence of such fact, condition, requirement or exception.

10.4    Title Insurance. At the Closing, Escrow Holder will issue to Buyer a standard CLTA policy of title insurance, or, if requested by Buyer, an ALTA policy of title insurance (provided that Buyer has satisfied all requirements to obtain an ALTA policy, including, without limitation, the preparation of an ALTA survey), in an amount equal to the Purchase Price showing: (a) fee title to the Real Property vested in Buyer; (b) taxes paid current; and (c) no monetary encumbrances or liens, other than covenants, conditions, restrictions, reservations, rights, rights-of-way, easements, and liens for taxes and further containing a standard mechanic's lien endorsement ("Title Policy"). Seller shall not be required to incur any liability or to provide any indemnities whatsoever respecting the extended ALTA coverage or any endorsements requested by Buyer. Escrow Holder, by closing the Escrow, shall be deemed to have irrevocably committed to issue the Title Policy.

## SECTION 10
### Costs and Expenses

10.1    BUYER.

Buyer will pay (a) all premiums for the Title Policy and the cost of all endorsements; (b) any document recording charges; (c) all escrow fees and costs; (d) all real property transfer taxes; and (e) real property taxes.

10.2.   OTHER COSTS AND EXPENSES.

Except as otherwise provided in Section 15 and 17.6, Buyer and Seller will each pay all of their own legal and professional fees and fees of other consultants incurred by Buyer and Seller.

## SECTION 11
### Prorations

11.1.   TAXES.

All non-delinquent real estate taxes on the Property will be prorated as of the Closing based on the actual current tax bill.  If the Closing takes place before the real estate taxes are fixed for the tax year in which the Closing occurs, the apportionment of real estate taxes will be made on the basis of the real estate taxes for the immediately preceding tax year applied to the latest assessed valuation.  All delinquent taxes, if any, on the Property will be paid at the Closing from funds accruing to Seller.  All supplemental taxes billed after the Closing for periods prior to the Closing will be paid promptly by Seller.

11.2.   UTILITIES.

Water, electricity, gas, and other utility payments or charges shall not be adjusted through Escrow if readings can be made at Closing by the utility companies.  Buyer agrees to open accounts with the respective utilities and to cooperate with Seller in requesting readings as of Closing.  In the event that appropriate readings cannot be obtained as of Closing, then adjustments shall be made by Buyer and Seller through Escrow on the basis of estimates from the latest bills available.

11.3.   GENERAL PRORATION PROVISIONS.

Such other items that are customarily prorated in transactions of this nature shall be ratably prorated between Buyer and Seller.  Bills received after the Closing Date which relate to expenses incurred, services performed or other amounts allocable to any period prior to the Closing Date shall be paid by Seller unless Buyer shall have received a credit therefor at Closing.  All prorations and Closing adjustments shall be made on the basis of a three hundred sixty-five (365) day calendar year.

11.4.   INDEMNIFICATION.

Buyer shall assume and pay all debts, charges, claims, damages, and liabilities attributable to the ownership and operation of the Property which arise after the close of Escrow and shall hold Seller harmless therefrom and indemnify and defend against the same, except liabilities expressly assumed in writing by Seller. Seller shall pay and hold Buyer harmless from all debts, charges, claims, damages, and liabilities attributable to the Seller's ownership and operation of the Property which arise before the close of Escrow and shall hold Buyer harmless therefrom and indemnify and defend against the same, except liabilities expressly assumed in writing by Buyer.

## SECTION 12
### Contracts

Seller shall not enter into any new maintenance, repair, management, equipment leasing, supply, employment, laundry, telephone, or cable service, utility or other contracts relating to the Property, or extend, renew or replace any existing contracts relating to the Property, without the prior written consent of Buyer, which shall not be unreasonably withheld, conditioned or delayed.

## SECTION 13
### Remedies

13.1.    DEFAULT BY SELLER.

In the event the Closing and the consummation of the transactions contemplated by this Agreement do not occur by reason of any default (which includes any material breach of the provisions of this Agreement) by Seller, Buyer will be entitled to pursue any or all of the following remedies: (a) pursue an action for specific performance; or (b) pursue any other remedy available to Buyer at law or in equity.

13.2.    DEFAULT BY BUYER.

IF THE CLOSING DOES NOT OCCUR BY REASON OF ANY DEFAULT BY BUYER, BUYER AND SELLER AGREE THAT IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO ESTIMATE THE DAMAGES SUFFERED BY SELLER AS A RESULT OF BUYER'S FAILURE TO COMPLETE THE PURCHASE OF THE PROPERTY PURSUANT TO THIS AGREEMENT, AND THAT UNDER THE CIRCUMSTANCES EXISTING AS OF THE DATE OF THIS AGREEMENT, THE LIQUIDATED DAMAGES PROVIDED FOR IN THIS SUBSECTION REPRESENT A REASONABLE ESTIMATE OF THE DAMAGES WHICH SELLER WILL INCUR AS A RESULT OF SUCH FAILURE; PROVIDED, HOWEVER, THAT THIS PROVISION WILL WAIVE OR AFFECT BUYER'S INDEMNITY OBLIGATIONS AND SELLER'S RIGHTS TO THOSE INDEMNITY OBLIGATIONS UNDER THIS AGREEMENT. THEREFORE, BUYER AND SELLER DO HEREBY AGREE THAT A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT THAT SELLER WOULD SUFFER IN THE EVENT THAT BUYER DEFAULTS OR FAILS TO COMPLETE THE PURCHASE OF THE PROPERTY IS AN AMOUNT EQUAL TO TEN THOUSAND DOLLARS ($10,000.00).  THIS AMOUNT WILL BE THE FULL, AGREED AND LIQUIDATED DAMAGES FOR THE BREACH OF THIS AGREEMENT BY BUYER. THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR A PENALTY AGAINST BREACH, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER. UPON DEFAULT BY BUYER, THIS AGREEMENT WILL BE TERMINATED AND, EXCEPT FOR BUYER'S INDEMNITY OBLIGATIONS WHICH MAY BE ENFORCED BY SELLER, NEITHER PARTY SHALL HAVE ANY FURTHER RIGHTS OR OBLIGATIONS HEREUNDER, EACH TO THE OTHER EXCEPT FOR THE RIGHT OF SELLER TO COLLECT SUCH LIQUIDATED DAMAGES FROM BUYER AND ESCROW HOLDER.

Seller's Initials

Buyer's Initials

## SECTION 14
### Brokers

Seller represents and warrants to Buyer, and Buyer represents and warrants to Seller, that no broker or finder has been engaged by either of them in connection with any of the transactions contemplated by this Agreement.  Buyer and Seller will indemnify, save harmless and defend the other from any liability, cost or expense arising out of or connected with any claim for any other commission or compensation made by any person or entity claiming to have been retained or contacted by them in connection with this transaction.

## SECTION 15
### Risk of Loss; Condemnation

EXHIBIT "1"

Page 9

In the event that, after the date hereof but prior to the Closing, either: (a) all or any portion of the Property is taken pursuant to or in lieu of and under threat of eminent domain proceedings; or (b) the occurrence of any "material damage or destruction" to any of the Property by any casualty, Seller shall promptly notify Buyer in writing thereof. Buyer may elect to terminate this Agreement by providing written notice to Seller within ten (10) days following receipt of written notice thereof from Seller, whereupon neither party shall have any further rights or obligations under this Agreement except as to those provisions of this Agreement which provide that the same shall survive the termination hereof. If Buyer does not elect to terminate this Agreement, Buyer shall be deemed to have elected to complete the transactions contemplated hereunder. Seller shall have no obligation to repair or replace any damage or destruction, and Seller shall, at the Closing, assign to Buyer all claims of Seller respecting any condemnation or casualty insurance coverage, as applicable, and all proceeds thereof received by Seller prior to the Closing (other than proceeds applicable to damage which shall have been repaired by Seller prior to the Closing and rent loss proceeds for the period prior to Closing). For purposes of this Section 15, "material damage or destruction" shall mean any damage or destruction where the estimated cost of repair of the same is in excess of One Hundred Thousand Dollars ($100,000.00).

## SECTION 16

16.1.    NOTICE

Any and all notices and demands by either party hereto to the other party, required or desired to be given hereunder shall be in writing and shall be validly given only if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested, or if made by Federal Express or other delivery service which keeps records of deliveries and attempted deliveries, or if made by facsimile machine (receipt of which is acknowledged or if a copy thereof is delivered the following day by a delivery service

To Seller:          Mt Yohai LLC
                    c/o Goe & Forsythe, LLP
                    Attn: Marc C. Forsythe, LLP
                    18101 Von Karman, Suite 1200
                    Irvine, California 92612
                    Facsimile:  (949) 955-9437


                    With a copy to:
                    Goe & Forsythe, LLP
                    Attn: Marc C. Forsythe, LLP
                    18101 Von Karman, Suite 1200
                    Irvine, California 92612
                    Facsimile:  (949) 955-9437


To Buyer:           DCM P-8, LLC
                    1900 Main St., Suite 640
                    Irvine, California 92614
                    Facsimile:  (949) 234-6254


                    With copy to:
                    Wilson Keadjian Browndorf, LLP
                    Attn: Matthew C. Browndorf
                    1900 Main St., Suite 600
                    Irvine, California 92614

EXHIBIT "1"

Facsimile:  (949) 234-6254

To Escrow Holder:    First American Title Company
Attn: Frank LaBlanc
4 First American Way
Santa Ana, California 92707
Facsimile:  (714) 913-6770

16.2.    CHANGES.

A party hereto may change its address for the purpose of receiving notices or demands as herein provided by a written notice given in the manner aforesaid to the other party hereto, which notice of change of address shall not become effective, however, until the actual receipt thereof by the other party.

**SECTION 17**
Miscellaneous Provisions

17.1.    CALIFORNIA LAW FORUM.

The laws of the State of California shall govern the validity, construction, performance, and effect of this Agreement.  Any action relating to this agreement may be commenced and maintained only in a court having competent jurisdiction that is located in Orange County, California.

17.2.    SUCCESSORS.

This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.

17.3.    ASSIGNMENT.

Buyer may assign this Agreement one time to an entity that controls, is controlled by or is under common control with Buyer or any of Buyer's members with written notice to Seller and Escrow Holder but without Seller's consent.  Any other assignment by Buyer shall require Seller's prior written consent, which consent shall not be unreasonably withheld.

17.4.    NON-WAIVER.

The failure to enforce or the delay in enforcement of any provision of this Agreement by a party hereto or the failure of a party to exercise any right hereunder shall in no way be construed to be a waiver of such provision or right (or of any other provision or right hereof whether of a similar or dissimilar nature) unless such party expressly waives such provision or right in writing.

17.5.    PARTIAL INVALIDITY.

If any term, provision, covenant, or condition of this Agreement, or any application thereof, should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all provisions, covenants and conditions of this Agreement, and all applications thereof, not held invalid, void or unenforceable, shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby.

17.6.    ATTORNEYS' FEES.

In the event any action is commenced by either party against the other in connection herewith (including any action to lift a stay or other bankruptcy proceeding), the prevailing party shall be entitled to payment from the other party or parties of the prevailing party's costs and expenses, including reasonable attorneys' fees, as determined by the court.

17.7.    ENTIRE AGREEMENT.

This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained herein and supersedes all prior representations, agreements and understandings of the parties, including any "letter of intent," "letter of understanding," or similar documents. No addition to or modification of this Agreement shall be binding unless executed in writing by the parties hereto.

17.8.    TIME OF ESSENCE.

Time is of the essence in the performance of the parties' respective obligations set forth in this Agreement and all the terms, provisions, covenants, and conditions hereof.

17.9.    RECORDATION OF AGREEMENT.

Each party covenants and agrees that it will not cause this Agreement or a memorandum thereof to become of record in any public office. In the event either party violates this provision, the other party may, at its election and in addition to any other remedies it may have, terminate this Agreement and the violating party shall pay the costs of cancellation of the Escrow Holder.

17.10.    COUNTERPARTS.

This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall be an original, but all such counterparts shall constitute one and the same Agreement. Any signature page of this Agreement may be detached from any counterpart without impairing the legal effect of any signatures thereon, and may be attached to another counterpart, identical in form thereto, but having attached to it one or more additional signature pages. To facilitate execution of this Agreement, the parties may execute and exchange by telephone facsimile counterparts of the signature pages.

17.11.    HEADINGS.

The headings of the various paragraphs of this Agreement have been inserted only for convenience, and shall not be deemed in any manner to modify or limit any of the provisions of this Agreement, or be used in any manner in the interpretation of this Agreement.

17.12.    INTERPRETATION.

Whenever the context so requires, all words used in the singular shall be construed to have been used in the plural (and vice versa), each gender shall be construed to include any other genders, and the word "person" shall be construed to include a natural person, a corporation, a firm, a partnership, a joint venture, a trust, an estate, or any other entity.

17.13.  DATES.

The term "business day" shall mean calendar days other than a Saturday, Sunday or national or State of Nevada holiday.  If any dates hereunder for the taking of some action or the expiration of some time period fall on a day that is not a business day, such date shall be the next following business day.

17.14.  SUBMISSION.

The submission of this Agreement for examination and/or execution hereof does not constitute a reservation of or option for the Property and this Agreement becomes effective only upon execution and delivery thereof by Buyer and Seller.

17.15.  JURY TRIAL WAIVER.

THE PARTIES KNOWINGLY AND FREELY WAIVE ANY RIGHT THEY MAY HAVE TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT.  THE PARTIES ACKNOWLEDGE AND REPRESENT THAT THE RIGHT TO A JURY TRIAL IS AN IMPORTANT RIGHT, THAT EACH HAS REVIEWED THIS WAIVER WITH LEGAL COUNSEL OF ITS OWN CHOOSING, OR HAS HAD AN OPPORTUNITY TO DO SO, THAT THIS PROVISION IS A MATERIAL AND NEGOTIATED TERM OF THIS AGREEMENT, THAT EACH PARTY WOULD NOT ENTER INTO THIS AGREEMENT BUT FOR THE JURY TRIAL WAIVER, AND THAT EACH PROVIDES THIS WAIVER HAVING HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL OF ITS CHOOSING.

_____                                    _____
Buyer's Initials                                                       Seller's Initials

17.16.  NO INFERENCE.

The parties agree that all parties participated in the negotiation and drafting of this Agreement and that this Agreement shall not be construed against any party as a result of such party's role in the drafting of this Agreement.

17.17.  FURTHER ASSURANCES.

In addition to the obligations required to be performed hereunder by Seller and Buyer at or prior to Closing, each Party, from and after Closing, shall execute, acknowledge and/or deliver such other instruments as may be reasonably requested in order to effectuate the purposes of this agreement, provided said action does not impose additional liability or obligations on Seller or Buyer beyond that imposed by this agreement or the documents delivered at closing.

IN WITNESS WHEREOF, Buyer and Seller have executed this Agreement as of the day and year first above written.

Seller:

Mt Yohai, LLC, a Delaware limited
liability company, debtor-in-possession
in U.S. Bankruptcy Court
Case No. 8:16-bk-15157-CB

By:    Baylor Holding, LLC
Its:    Manager

By:    _____
Name:    Jeffrey Yohai
Title:    Managing Member

Buyer:

DCM P-8, LLC, a Delaware limited
liability company

By:    _____
Name:    MR. MOHIT K. AGARWAL
Title:    MANAGING DIRECTOR

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

EXHIBIT "1"

## JOINDER BY ESCROW HOLDER

First American Title Company joins this Agreement for the purposes of agreeing to act as Escrow Holder under this Agreement and to confirm that the Opening of Escrow occurred on _____, 2017.

First American Title Company

By:      _____
Name:   _____
Title:    _____

Opening of Escrow: _____, 2017.


Escrow Number:      _____

EXHIBIT "A"
TO PURCHASE AGREEMENT

DESCRIPTION OF PROPERTY

<u>EXHIBIT "B"</u>
<u>TO PURCHASE AGREEMENT</u>

<u>DEED</u>

APN NO.:

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

MAIL TAX STATEMENTS TO:

_____
(Space above line for Recorder's use)

<u>GRANT BARGAIN AND SALE DEED</u>

    Mt Yohai, LLC, a Delaware limited liability company, "<u>Grantor</u>," does hereby Grant, Bargain, Sell, and Convey to DCM P-8, LLC, a Delaware limited liability company, "<u>Grantee</u>," the real property in the County of Los Angeles, State of California (the "<u>Land</u>") described on <u>Exhibit "A"</u> attached hereto and incorporated herein by this reference, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or otherwise appertaining, including water rights of all kinds.

<u>SUBJECT TO</u>:

    1.    Unpaid general taxes for the current fiscal tax year; and

    2.    All covenants, conditions, restrictions, reservations, rights, rights-of-way, and easements recorded against the Land prior to or concurrently with this Deed, and all other matters of record or apparent upon inspection of the Land.

Mt Yohai, LLC, a Delaware limited liability company

By:    _____
Name:  _____
Title:   _____

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____ )

On _____ before me, _____

(insert name and title of the officer)

personally appeared _____ _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    **(Seal)**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 18101 Von Karman Avenue, Suite 510, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR ORDER: (1) APPROVING THE PRIVATE SALE OF ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS AND OTHER INTERESTS IF PURCHASER ACQUIRES REAL PROPERTY IN OTHER PENDING CHAPTER 11 CASE; (2) FINDING BUYER IS A GOOD FAITH PURCHASER; (3) WAIVING 14-DAY STAY OF FRBP 6004(h); AND (4) AUTHORIZING DEBTOR TO INCUR POST-PETITION FINANCING FROM THE PURCHASER TO PAY OFF ALL OF ITS CREDITORS (PURSUANT TO 11 U.S.C. §364); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF MOHIT K. AGARWAL AND MARC C. FORSYTHE IN SUPPORT**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) June 7, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Jeffrey W Dulberg    jdulberg@pszjlaw.com**
- **Marc C Forsythe    kmurphy@goeforlaw.com, mforsythe@goeforlaw.com;goeforecf@gmail.com**
- **Michael J Hauser    michael.hauser@usdoj.gov**
- **James Andrew Hinds    jhinds@jhindslaw.com, zbilowit@jhindslaw.com**
- **Kambiz J Shabani    joseph@shabanipartners.com, kevin@shabanipartners.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) June 7, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) June 7, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- Honorable Scott Clarkson, USBC, 411 West Fourth Street, Santa Ana, CA 92612 (hand delivered)

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 7, 2017 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |