Marc C. Forsythe - State Bar No. 153854
Charity J. Miller – State Bar No. 286481
**GOE & FORSYTHE, LLP**
18101 Von Karman Avenue, Suite 1200
Irvine, CA 92612
mforsythe@goeforlaw.com
cmiller@goeforlaw.com
Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

Attorneys for Mt Yohai, LLC
Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>MT YOHAI, LLC, a Delaware liability company,<br><br>　　　　Debtor and Debtor in Possession. | Case No. 8:16-bk-15157 CB<br><br>Chapter 11 Case<br><br>**NOTICE OF EXECUTED PURCHASE AND SALE AGREEMENT BETWEEN DEBTOR AND THOMAS FANNING, OR HIS ASSIGN IN RELATION TO MOTION AND MOTION FOR ORDER:**<br><br>**(1) APPROVING THE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND OTHER INTERESTS IF PURCHASER ACQUIRES REAL PROPERTY IN OTHER PENDING CHAPTER 11 CASE, SUBJECT TO OVERBID;**<br>**(2) FINDING BUYER IS A GOOD FAITH PURCHASER; AND**<br>**(3) WAIVING 14-DAY STAY OF FRBP 6004(h)**<br><br>**Hearing (Auction Date):**<br><br>　Date:　　December 13, 2017<br>　Time:　　11:00 a.m.<br>　Place:　　5D |

**TO THE HONORABLE CATHERINE BAUER, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on November 22, 2017, Debtor and Debtor-in-possession  Mt Yohai, a Delaware limited liability company ("Debtor"), filed a Motion (the "Motion") for the entry of an order to approve the sale of the real property located at 2521 Nottingham Avenue, Los Angeles, CA 90027, consisting of raw land described herein, including any and all improvements to such property (the "Mt. Yohai Property") to Thomas Fanning, or his assign for $1,800,000.00 (the "Purchaser" or "Buyer"), subject to overbid.  The hearing on the Motion is set, pursuant to Local Bankruptcy Rule 6004-1, to held on **December 13, 2017 at 11:00 a.m.** in Courtroom 5D at the United States Bankruptcy Court located at 411 West Fourth Street, Santa Ana, CA 92701.

Attached to the Motion as Exhibit "A" to the Declaration of Jeff Yohai is the Letter of Intent to Purchase between Debtor and Buyer.  If another person or entity submits a bid of at least $1,900,00.00,  an auction will be conducted on December 13, 2017 at 11:00 a.m.

Nothing in this pleading alters the content of the Motion.  This pleading simply attaches Exhibit "1," a true and correct copy of the executed Purchase and Sale Agreement (the "Agreement") between Debtor and Buyer for the sale of the Mt. Yohai Property, subject to overbid.  Any potential overbidder must agree to terms substantially similar to the Agreement.

Dated:  November 28, 2017                    Respectfully submitted by

GOE & FORSYTHE, LLP

By:    */s/ Marc C. Forsythe*                              
Marc C. Forsythe
GOE & FORSYTHE, LLP
Attorneys for Debtor

# EXHIBIT 1

# EXHIBIT 1

## PURCHASE AND SALE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS

THIS PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS ("Agreement") is entered into as of the 27th day of November, 2017 (the "Effective Date"), by and between Mt. Yohai, LLC, a California limited liability company ("Seller"), debtor-in-possession in U.S. Bankruptcy Court Case No. 8:16-bk-15157-CB ("Bankruptcy Case") and Thomas Fanning or his assignee ("Buyer").

## RECITALS

A.      Seller is the owner of that certain real property with improvements consisting of 2.6 acres of vacant land located at 2521 Nottingham Avenue, Los Angeles, CA 90027, and more particularly described on Exhibit "A" attached hereto and incorporated herein by this reference (the "Real Property").

B.      Buyer desires to purchase from Seller and Seller desires to sell to Buyer the Real Property, Personal Property, Intangible Property and Contracts (as defined herein), and collectively referred to as the "Property").

NOW, THEREFORE, for the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows.

## SECTION 1
### Certain Definitions

In addition to other terms defined elsewhere in this Agreement, the following terms will be defined as follows.

1.1.    "SALE APPROVAL DATE."

THE PROPOSED HEARING DATE FOR APPROVAL OF THE SALE OF THE REAL PROPERTY BY THE BANKRUPTCY COURT IS DECEMBER 13, 2017 (THE "AUCTION").

1.2.    "CLOSING" OR "CLOSING DATE."

The proposed closing date for the transaction contemplated by this Agreement in the event Buyer is the successful bidder at the Auction is within twenty-five business days of entry of the order by the bankruptcy court approving the sale of the Real Property.

1.3.    "DUE DILIGENCE PERIOD."

The period of time within which Buyer shall conduct its inspections of the Property prior to the Auction.

1.4.    "ESCROW HOLDER."

First American Title Company.

1.5.    "GENESIS."

Genesis Capital Master Fund II, LLC, a Delaware limited liability company, a California finance lender.

EXHIBIT "1"

1.6.    "PURCHASE PRICE."

$1,800,000.00, subject to reduction by $522,000.00 in the event Bowery waives and releases its secured claim against the Real Property and Mt. Yohai, LLC prior to or concurrently with Closing.

1.7    "BOWERY"

Bowery Investment Group, Inc., a California corporation, dba Bowery Design & Development. Bowery, a secured claimant in the amount of $522,000.00.

## SECTION 2
### Purchase and Sale

Upon and subject to the terms and conditions set forth in this Agreement, Seller agrees to sell to Buyer and Buyer agrees to buy from Seller: (a) the Real Property, together with all improvements, easements, water rights, if any, hereditaments and appurtenances thereto; (b) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property upon, attached or appurtenant to or used in connection with, the ownership, operation and maintenance of the Real Property ("Personal Property"); (c) all of Seller's right, title and interest, if any, in and to all intangible property relating to the Real Property or the Personal Property in the possession or control of Seller, including, without limitation, all trademarks, trade names, licenses, permits, approvals, authorizations, and other entitlements, all guaranties and warranties related to the Real Property and/or the Personal Property, and all studies, books, records, reports, test results, environmental assessments, and other documents and materials related to the Real Property (the "Intangible Property"); and (d) all other agreements and all other assignable permits regarding the Property, including, without limitation, all plans, maps, permits, drawings, architectural rendering, designs and floor plans, elevations, budgets, proformas, entitlements, and Bowery work product (the "Contracts"); including without limitation tentative maps, final maps, building permits, utility extension or construction agreements, utility refund agreements, potable water and reclaimed water will-serve commitments and agreements regarding the dedication of water rights and other water-related matters, if any, water discharge permits, special use permits, development agreements, PUD agreements, and HOA agreements.

## SECTION 3
### Purchase Price; Payments

The Purchase Price for the Property shall be paid as follows:

3.1.    PAYMENT OF PURCHASE PRICE.

WITHIN ONE (1) BUSINESS DAY OF THE CLOSING DATE, BUYER SHALL DELIVER TO THE ESCROW HOLDER THE PURCHASE PRICE, PLUS ANY OTHER SUMS NECESSARY TO CLOSE, IN THE FORM OF CONFIRMED WIRE TRANSFER OF FUNDS OR OTHER IMMEDIATELY AVAILABLE FUNDS.

3.2.    PAYMENT DUE TO GENESIS TO CLOSE.

Through November 29, 2017, the amount owed to Genesis, as the first lienholder on the Real Property is $954,871.72 (nine hundred, fifty-four thousand, eight hundred seventy-one dollars and 72/100 cents) (the "November 29, 2017 Payoff"). Daily interest on this unpaid balance and advances will continue to accrue at $271.99 (two hundred and seventy-one dollars and 88/100 cents) (the "Daily Accrual") from November 30, 2017 to the date of Closing. Genesis will also be submitting a claim into escrow for attorneys' fees and costs, with all parties reserving their rights to object to the same. The total of the November 29, 2017 Payoff, the Daily Accrual through the date of Closing and Genesis claim into escrow for through after

for attorneys' fees and costs, with all parties reserving their rights to object to the same, must be paid to Genesis through escrow in order for the sale of the Real Property to close.

## SECTION 4
### Representations and Warranties

4.1.    SELLER'S REPRESENTATIONS.

Seller represents and warrants to Buyer as of the Effective Date and as of the date of Closing as follows.

(a)    The execution and delivery of this Agreement, the consummation of the transactions provided for herein and the fulfillment of the terms hereof on the part of Seller will not result in a breach of any instrument to which Seller is a party or by which Seller is bound or of any judgment, decree or order of any court or governmental body or any law, rule or regulation applicable to Seller.

(b)    The execution, delivery and performance of this Agreement by the persons executing the same on behalf of Seller have been duly and validly authorized (and by their execution hereof such persons individually represent and warrant that they are so authorized) and this Agreement and the other agreements and instruments contemplated hereby constitute legal, valid and binding obligations of Seller, enforceable in accordance with their respective terms.

(c)    Except for the approval of the Bankruptcy Court in the Bankruptcy Case, no consent, approval or authorization of any governmental authority or private party is required in connection with the execution, delivery and performance of this Agreement by Seller.

4.2.    BUYER'S REPRESENTATIONS.

Buyer represents and warrants to Seller as of the Effective Date and as of the date of Closing as follows.

(a)    Buyer is a duly formed and validly existing limited liability company in good standing pursuant to the laws of the State of Delaware and has the full power, authority and legal right to execute and deliver and perform under this Agreement.

(b)    The execution and delivery of this Agreement, the consummation of the transactions provided for herein and the fulfillment of the terms hereof on the part of Buyer will not result in a breach of any instrument to which Buyer is a party or by which Buyer is bound or of any judgment, decree or order of any court or governmental body or any law, rule or regulation applicable to Buyer.

(c)    The execution, delivery and performance of this Agreement by the persons executing the same on behalf of Buyer have been duly and validly authorized (and by their execution hereof such persons individually represent and warrant that they are so authorized) and this Agreement and the other agreements and instruments contemplated hereby constitute legal, valid and binding obligations of Buyer, enforceable in accordance with their respective terms.

(d)    Except for the approval of the Bankruptcy Court in the Bankruptcy Case, no consent, approval or authorization of any governmental authority or private party is required in connection with the execution, delivery and performance of this Agreement by Buyer.

EXHIBIT "1"

4.3.    RELIANCE.

The representations and warranties contained herein are made with the knowledge and expectation that Buyer and Seller, as the case may be, are placing complete reliance thereon.

4.4.    SURVIVAL.

The representations and warranties contained herein shall survive the Closing, provided, however, that all such representations and warranties shall expire one (1) year after the Closing except with respect to violations alleged in writing within such period.

## SECTION 5
### Deliveries to Escrow Holder

5.1.    BY SELLER.

On or prior to the Closing Date, Seller shall deliver or cause to be delivered to Escrow Holder the following items:

(a)    A Grant, Bargain, Sale Deed ("Deed"), substantially in the form attached to this Agreement as Exhibit "B" and incorporated herein, duly executed and acknowledged by Seller and in recordable form, conveying the Property to Buyer.

(b)    A State of California Declaration of Documentary Transfer Tax showing the real property transfer tax due, duly executed by Seller.

(c)    A Transferor's Certificate of Non-Foreign Status, duly executed by Seller.

(d)    An Assignment and Bill of Sale conveying title to the Personal Property, the Intangible Property and the Contracts to Buyer, duly executed by Seller.

(e)    Any other documents required by this Agreement to be delivered by Seller to Escrow Holder.

(f)    Possession of the Property.

5.2.    BY BUYER.

On or prior to the Closing Date, Buyer will deliver or cause to be delivered to Escrow Holder the following items:

(a)    The Purchase Price plus any other sums necessary to close, in the form of wire transfer or other immediately available funds.

(b)    A State of California Declaration of Documentary Transfer Tax showing the real property transfer tax due, duly executed by Buyer.

(c)    Any other documents required by this Agreement to be delivered by Buyer to Escrow Holder.

(d)    Evidence reasonably acceptable to Seller that the documents delivered by Buyer to Seller at Closing have been duly authorized by Buyer, duly executed on behalf of Buyer, and when delivered constitute valid and binding obligations of Buyer.

5.3.    BY BUYER AND SELLER.

Buyer and Seller will each deposit such other instruments as are reasonably required by Escrow Holder or otherwise required to close Escrow. Seller and Buyer hereby designate the Escrow Holder as the "Reporting Person" for the transaction pursuant to Section 6045(e) of the Internal Revenue Code.

**SECTION 6**
Conditions to the Close Of Escrow

6.1.    CONDITIONS PRECEDENT TO BUYER'S OBLIGATIONS.

The following conditions must be satisfied not later than the Closing Date or such other period of time as may be specified below and, as such, are conditions precedent to Buyer's obligations under Section 6.2:

(a)    The Motion to Approve the Sale of the Real Property scheduled for December 13, 2017, shall have been granted by the bankruptcy court in the Bankruptcy Case. The bankruptcy court shall enter an order authorizing the transfer of the Real Property free and clear of all liens, claims, and adverse claims of ownership and the Real Property is in fact transferred free and clear of all liens, claims, and adverse claims of ownership.

(b)    Real Property shall be transferred free and clear of all liens, claims, and adverse claims of ownership.

(c)    Seller will have duly performed each and every agreement to be performed by Seller hereunder in all material respects and Seller's representations, warranties and covenants set forth in this Agreement will be true and correct as of the Closing Date in all material respects.

(d)    Seller will have delivered the items described in Section 5.1.

(e)    Once the order approving the Sale of the Real Property is final, the Real Property shall be transferred pursuant to the Sale Order and, thereafter, the Real Property shall not constitute property of the estate as of the Closing Date, provided that the Bankruptcy Court shall retain jurisdiction related to the transaction, the Real Property and the Sale Order.

(f)    Subject to Bankruptcy Court approval, a plan will be submitted to distribute the proceeds from the Sale, the Bankruptcy Case will be converted to a Chapter 7 Case, or the Bankruptcy Case shall be dismissed or the Real Property shall be excluded from the Bankruptcy Case.

(g)    No material change to the Real Property shall have occurred after the date of this Agreement and prior to the Close of Escrow without the prior written consent of Buyer.

(h)    Title Insurance as set forth in Section 9.4 is in fact issued.

The conditions set forth in this Section 6.1 are solely for the benefit of Buyer and may be waived only by Buyer. At all times Buyer has the right to waive any such condition. Such waiver or waivers must be in writing to Seller.

EXHIBIT "1"

6.2.   CONDITIONS PRECEDENT TO SELLER'S OBLIGATIONS.

The following conditions must be satisfied not later than the Closing Date or such other period of time as may be specified below and, as such, are conditions precedent to Seller's obligations under Section 6.1:

(a)   The Motion to Approve the Sale of the Real Property scheduled for December 13, 2017, shall have been granted by the bankruptcy court in the Bankruptcy Case.

(b)   Buyer will have duly performed each and every agreement to be performed by Buyer hereunder in all material respects and Buyer's representations, warranties and covenants set forth in this Agreement will be true and correct as of the Closing Date in all material respects.

(b)   Buyer shall have delivered to Escrow Holder the items described in Section 5.2.

The conditions set forth in this Section 6.2 are solely for the benefit of Seller and may be waived only by Seller.  At all times Seller has the right to waive any such condition.  Such waiver or waivers must be in writing to Buyer.

## SECTION 7
### Due Diligence Period

7.1.   INVESTIGATIONS.

Buyer shall have the right, at any time up to and including the conclusion of the Auction (the "Due Diligence Period"), if Buyer chooses to do so, investigate any matters related to the Property in Buyer's discretion.  Seller agrees to provide Buyer with copies of all documents, plans and permits, including any environmental inspections, provided that such documents are in Seller's actual possession or control.  If Buyer desires to terminate this Agreement, then Buyer shall deliver to Seller a written notice terminating this Agreement (the "Termination Letter"), which must be received by Seller by not later than at the commencement of the Auction. If Seller timely receives the Termination Letter, then this Agreement shall terminate, in which case neither party shall have any further rights or obligations hereunder except as otherwise set forth herein. Failure to deliver the Termination Letter by such time shall result in Buyer being obligated to proceed with the Closing on its purchase of the Property and comply with all obligations of Buyer under this Agreement.

7.2.   ACCESS.

Buyer, Buyer's employees and representatives, will be afforded reasonable access to the Property upon reasonable notice to Seller for the purposes of conducting an investigation of the Property.  Buyer covenants and agrees to indemnify and hold Seller harmless from all losses, damages, liabilities, actions, suits, proceedings, claims, demands, assessments, judgments, costs, and expenses, including reasonable attorneys' fees, arising from Buyer's entry upon the Property.  This Section 7.2 shall survive the Closing or sooner termination of this Agreement.

## SECTION 8
### Property "As-Is/Where-Is"

8.1.   AS-IS/WHERE-IS PURCHASE.

Buyer agrees that the Property is to be sold to and accepted by Buyer at the Closing in its then condition and in its then location, "AS-IS/WHERE-IS," and with all faults, if any.  No person acting on behalf

of Seller is authorized to make, and by execution hereof, Buyer acknowledges that no person has made, any representation, agreement, statement, warranty, guarantee, or promise regarding the Property or the transaction contemplated herein or the zoning, construction, physical condition, or other status of the Property except as may be expressly set forth in this Agreement. Seller shall have no liability to Buyer for the accuracy or completeness of any information provided to Buyer by Seller relating to the Property.

8.2.    NO REPRESENTATIONS OR WARRANTIES.

Except as expressly stated herein, Seller makes no representation or warranty, express or implied, with respect to the Property. No representation, warranty, agreement, statement, guaranty, or promise, if any, made by any person acting on behalf of Seller which is not contained in this Agreement will be valid or binding on Seller.

**SECTION 9**
Title

9.1    Title Report. Escrow Holder shall coordinate with Title and deliver to Buyer a preliminary title report or commitment (the "Title Report") and a copy of all recorded documents for which exception shall be taken and shall use its best efforts to deliver such Title Report within five (5) days following the opening of Escrow.

9.2    Approval of Exceptions.    Buyer shall have the right to object to any fact, condition, requirement or exception set forth in the Title Report other than as might be disclosed by a current land title survey of the property, upon written notice (a "Notice of Objection") given to Seller no later than Fifteen (15) days prior to expiration of the Due Diligence Period. Subject to the remaining provisions of this Section 9.2, Buyer shall be deemed to have accepted any fact, condition, requirement or exception reflected in the Title Report for which no Notice of Objection shall have been timely given. Seller shall have the right, in its sole and absolute discretion and upon written notice to Buyer given no later than Ten (10) days from and after the date any Notice of Objection shall have been received by Seller (a "Title Reply Period"), within to agree to cure any title objection properly noticed by Buyer. Seller shall be deemed to have refused to satisfy or cure, as the case may be, any and each fact, condition, requirement and/or exception so noticed by Buyer for which no such notice of cure (a "Notice of Cure") shall have been given

9.3    Termination of Agreement. If Seller shall not give Notice of Cure with respect to each fact, condition, requirement or exception which is the subject of any property Notice of Objection, Buyer thereupon shall have the right in the sole and absolute discretion of Buyer and as Buyer's sole remedies hereunder to elect either (i) to terminate this Agreement as described in Section 7.1 or (ii) to accept title to the Property in such condition as Seller can convey and proceed to close of Escrow hereunder without any claim against Seller on account of the existence of such fact, condition, requirement or exception.

9.4    Title Insurance. At the Closing, Escrow Holder will issue to Buyer a standard CLTA policy of title insurance, or, if requested by Buyer, an ALTA policy of title insurance (provided that Buyer has satisfied all requirements to obtain an ALTA policy, including, without limitation, the preparation of an ALTA survey), in an amount equal to the Purchase Price showing: (a) fee title to the Real Property vested in Buyer; (b) taxes paid current; and (c) no monetary encumbrances or liens, other than covenants, conditions, restrictions, reservations, rights, rights-of-way, easements, and liens for taxes and further containing a standard mechanic's lien endorsement ("Title Policy"). Seller shall not be required to incur any liability or to provide any indemnities whatsoever respecting the extended ALTA coverage or any endorsements requested by Buyer. Escrow Holder, by closing the Escrow, shall be deemed to have irrevocably committed to issue the Title Policy.

Page 7

EXHIBIT "1"

## SECTION 10
### Costs and Expenses

10.1.  BUYER.

Buyer will pay (a) all premiums for the Title Policy and the cost of all endorsements; (b) any document recording charges; (c) all escrow fees and costs; (d) all real property transfer taxes; and (e) real property taxes.

10.2.  OTHER COSTS AND EXPENSES.

Except as otherwise provided in Section 15 and 17.6, Buyer and Seller will each pay all of their own legal and professional fees and fees of other consultants incurred by Buyer and Seller.

## SECTION 11
### Prorations

11.1.  TAXES.

All non-delinquent real estate taxes on the Property will be prorated as of the Closing based on the actual current tax bill.  If the Closing takes place before the real estate taxes are fixed for the tax year in which the Closing occurs, the apportionment of real estate taxes will be made on the basis of the real estate taxes for the immediately preceding tax year applied to the latest assessed valuation.  All delinquent taxes, if any, on the Property will be paid at the Closing from funds accruing to Seller.  All supplemental taxes billed after the Closing for periods prior to the Closing will be paid promptly by Seller.

11.2.  UTILITIES.

Water, electricity, gas, and other utility payments or charges shall not be adjusted through Escrow if readings can be made at Closing by the utility companies.  Buyer agrees to open accounts with the respective utilities and to cooperate with Seller in requesting readings as of Closing.  In the event that appropriate readings cannot be obtained as of Closing, then adjustments shall be made by Buyer and Seller through Escrow on the basis of estimates from the latest bills available.

11.3.  GENERAL PRORATION PROVISIONS.

Such other items that are customarily prorated in transactions of this nature shall be ratably prorated between Buyer and Seller.  Bills received after the Closing Date which relate to expenses incurred, services performed or other amounts allocable to any period prior to the Closing Date shall be paid by Seller unless Buyer shall have received a credit therefor at Closing.  All prorations and Closing adjustments shall be made on the basis of a three hundred sixty-five (365) day calendar year.

11.4.  INDEMNIFICATION.

Buyer shall assume and pay all debts, charges, claims, damages, and liabilities attributable to the ownership and operation of the Property which arise after the close of Escrow and shall hold Seller harmless therefrom and indemnify and defend against the same, except liabilities expressly assumed in writing by Seller. Seller shall pay and hold Buyer harmless from all debts, charges, claims, damages, and liabilities attributable to the Seller's ownership and operation of the Property which arise before the close of Escrow and shall hold Buyer harmless therefrom and indemnify and defend against the same, except liabilities expressly assumed in writing by Buyer.

EXHIBIT "1"

## SECTION 12
Contracts

Seller shall not enter into any new maintenance, repair, management, equipment leasing, supply, employment, laundry, telephone, or cable service, utility or other contracts relating to the Property, or extend, renew or replace any existing contracts relating to the Property, without the prior written consent of Buyer, which shall not be unreasonably withheld, conditioned or delayed.

## SECTION 13
Remedies

13.1.   DEFAULT BY SELLER.

In the event the Closing and the consummation of the transactions contemplated by this Agreement do not occur by reason of any default (which includes any material breach of the provisions of this Agreement) by Seller, Buyer will be entitled to pursue any or all of the following remedies: (a) pursue an action for specific performance; or (b) pursue any other remedy available to Buyer at law or in equity.

13.2.   DEFAULT BY BUYER.

IF THE CLOSING DOES NOT OCCUR BY REASON OF ANY DEFAULT BY BUYER, BUYER AND SELLER AGREE THAT IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO ESTIMATE THE DAMAGES SUFFERED BY SELLER AS A RESULT OF BUYER'S FAILURE TO COMPLETE THE PURCHASE OF THE PROPERTY PURSUANT TO THIS AGREEMENT, AND THAT UNDER THE CIRCUMSTANCES EXISTING AS OF THE DATE OF THIS AGREEMENT, THE LIQUIDATED DAMAGES PROVIDED FOR IN THIS SUBSECTION REPRESENT A REASONABLE ESTIMATE OF THE DAMAGES WHICH SELLER WILL INCUR AS A RESULT OF SUCH FAILURE; PROVIDED, HOWEVER, THAT THIS PROVISION WILL WAIVE OR AFFECT BUYER'S INDEMNITY OBLIGATIONS AND SELLER'S RIGHTS TO THOSE INDEMNITY OBLIGATIONS UNDER THIS AGREEMENT. THEREFORE, BUYER AND SELLER DO HEREBY AGREE THAT A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT THAT SELLER WOULD SUFFER IN THE EVENT THAT BUYER DEFAULTS OR FAILS TO COMPLETE THE PURCHASE OF THE PROPERTY IS AN AMOUNT EQUAL TO ONE HUNDRED THOUSAND DOLLARS ($100,000.00). THIS AMOUNT WILL BE THE FULL, AGREED AND LIQUIDATED DAMAGES FOR THE BREACH OF THIS AGREEMENT BY BUYER. THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR A PENALTY AGAINST BREACH, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER. UPON DEFAULT BY BUYER, THIS AGREEMENT WILL BE TERMINATED AND, EXCEPT FOR BUYER'S INDEMNITY OBLIGATIONS WHICH MAY BE ENFORCED BY SELLER, NEITHER PARTY SHALL HAVE ANY FURTHER RIGHTS OR OBLIGATIONS HEREUNDER, EACH TO THE OTHER EXCEPT FOR THE RIGHT OF SELLER TO COLLECT SUCH LIQUIDATED DAMAGES FROM BUYER AND ESCROW HOLDER.

_____                                     _____
Seller's Initials                                                          Buyer's Initials

## SECTION 14
Brokers

Seller represents and warrants to Buyer, and Buyer represents and warrants to Seller, that no broker or finder has been engaged by either of them in connection with any of the transactions contemplated by this Agreement.  Buyer and Seller will indemnify, save harmless and defend the other from any liability, cost or

Seller shall not enter into any new maintenance, repair, management, equipment leasing, supply, employment, laundry, telephone, or cable service, utility or other contracts relating to the Property, or extend, renew or replace any existing contracts relating to the Property, without the prior written consent of Buyer, which shall not be unreasonably withheld, conditioned or delayed.

## SECTION 13

Remedies

### 13.1. DEFAULT BY SELLER.

In the event the Closing and the consummation of the transactions contemplated by this Agreement do not occur by reason of any default (which includes any material breach of the provisions of this Agreement) by Seller, Buyer will be entitled to pursue any or all of the following remedies: (a) pursue an action for specific performance; or (b) pursue any other remedy available to Buyer at law or in equity.

### 13.2. DEFAULT BY BUYER.

IF THE CLOSING DOES NOT OCCUR BY REASON OF ANY DEFAULT BY BUYER, BUYER AND SELLER AGREE THAT IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO ESTIMATE THE DAMAGES SUFFERED BY SELLER AS A RESULT OF BUYER'S FAILURE TO COMPLETE THE PURCHASE OF THE PROPERTY PURSUANT TO THIS AGREEMENT, AND THAT UNDER THE CIRCUMSTANCES EXISTING AS OF THE DATE OF THIS AGREEMENT, THE LIQUIDATED DAMAGES PROVIDED FOR IN THIS SUBSECTION REPRESENT A REASONABLE ESTIMATE OF THE DAMAGES WHICH SELLER WILL INCUR AS A RESULT OF SUCH FAILURE; PROVIDED, HOWEVER, THAT THIS PROVISION WILL WAIVE OR AFFECT BUYER'S INDEMNITY OBLIGATIONS AND SELLER'S RIGHTS TO THOSE

INDEMNITY OBLIGATIONS UNDER THIS AGREEMENT. THEREFORE, BUYER AND SELLER DO HEREBY AGREE THAT A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT THAT SELLER WOULD SUFFER IN THE EVENT THAT BUYER DEFAULTS OR FAILS TO COMPLETE THE PURCHASE OF THE PROPERTY IS AN AMOUNT EQUAL TO ONE HUNDRED THOUSAND DOLLARS ($100,000.00). THIS AMOUNT WILL BE THE FULL, AGREED AND LIQUIDATED DAMAGES FOR THE BREACH OF THIS AGREEMENT BY BUYER. THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR A PENALTY AGAINST BREACH, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER. UPON DEFAULT BY BUYER, THIS AGREEMENT WILL BE TERMINATED AND, EXCEPT FOR BUYER'S INDEMNITY OBLIGATIONS WHICH MAY BE ENFORCED BY SELLER, NEITHER PARTY SHALL HAVE ANY FURTHER RIGHTS OR OBLIGATIONS HEREUNDER, EACH TO THE OTHER EXCEPT FOR THE RIGHT OF SELLER TO COLLECT SUCH LIQUIDATED DAMAGES FROM BUYER AND ESCROW HOLDER.

_____                    _____
Seller's Initials                              Buyer's Initials

## SECTION 14

Brokers

Seller represents and warrants to Buyer, and Buyer represents and warrants to Seller, that no broker or finder has been engaged by either of them in connection with any of the transactions contemplated by this Agreement. Buyer and Seller will indemnify, save harmless and defend the other from any liability, cost or expense arising out of or connected with any claim for any other commission or compensation made by any person or entity claiming to have been retained or contacted by them in connection with this transaction.

expense arising out of or connected with any claim for any other commission or compensation made by any person or entity claiming to have been retained or contacted by them in connection with this transaction.

## SECTION 15
### Risk of Loss; Condemnation

In the event that, after the date hereof but prior to the Closing, either: (a) all or any portion of the Property is taken pursuant to or in lieu of and under threat of eminent domain proceedings; or (b) the occurrence of any "material damage or destruction" to any of the Property by any casualty, Seller shall promptly notify Buyer in writing thereof. Buyer may elect to terminate this Agreement by providing written notice to Seller within ten (10) days following receipt of written notice thereof from Seller, whereupon neither party shall have any further rights or obligations under this Agreement except as to those provisions of this Agreement which provide that the same shall survive the termination hereof. If Buyer does not elect to terminate this Agreement, Buyer shall be deemed to have elected to complete the transactions contemplated hereunder. Seller shall have no obligation to repair or replace any damage or destruction, and Seller shall, at the Closing, assign to Buyer all claims of Seller respecting any condemnation or casualty insurance coverage, as applicable, and all proceeds thereof received by Seller prior to the Closing (other than proceeds applicable to damage which shall have been repaired by Seller prior to the Closing and rent loss proceeds for the period prior to Closing). For purposes of this Section 15, "material damage or destruction" shall mean any damage or destruction where the estimated cost of repair of the same is in excess of One Hundred Thousand Dollars ($100,000.00).

## SECTION 16

16.1.   NOTICE

Any and all notices and demands by either party hereto to the other party, required or desired to be given hereunder shall be in writing and shall be validly given only if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested, or if made by Federal Express or other delivery service which keeps records of deliveries and attempted deliveries, or if made by facsimile machine (receipt of which is acknowledged or if a copy thereof is delivered the following day by a delivery service

To Seller:          Mt Yohai LLC
                    c/o Goe & Forsythe, LLP
                    Attn: Marc C. Forsythe, LLP
                    18101 Von Karman, Suite 1200
                    Irvine, California 92612
                    Facsimile: (949) 955-9437


                    With a copy to:
                    Goe & Forsythe, LLP
                    Attn: Marc C. Forsythe, LLP
                    18101 Von Karman, Suite 1200
                    Irvine, California 92612
                    Facsimile: (949) 955-9437


To Buyer:           Thomas Fanning
                    c/o Kron & Card LLP
                    Attn: Scott A. Kron
                    29222 Rancho Viejo Rd., Suite 114
                    San Juan Capistrano, CA 92675
                    Facsimile: (949) 367-0520

Page 10

16.2.   CHANGES.

A party hereto may change its address for the purpose of receiving notices or demands as herein provided by a written notice given in the manner aforesaid to the other party hereto, which notice of change of address shall not become effective, however, until the actual receipt thereof by the other party.

**SECTION 17**
Miscellaneous Provisions

17.1.   CALIFORNIA LAW FORUM.

The laws of the State of California shall govern the validity, construction, performance, and effect of this Agreement.  Any action relating to this agreement may be commenced and maintained only in a court having competent jurisdiction that is located in Orange County, California.

17.2.   SUCCESSORS.

This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.

17.3.   ASSIGNMENT.

Buyer may assign this Agreement one time to an entity that controls, is controlled by or is under common control with Buyer or any of Buyer's members with written notice to Seller and Escrow Holder but without Seller's consent.  Any other assignment by Buyer shall require Seller's prior written consent, which consent shall not be unreasonably withheld.

17.4.   NON-WAIVER.

The failure to enforce or the delay in enforcement of any provision of this Agreement by a party hereto or the failure of a party to exercise any right hereunder shall in no way be construed to be a waiver of such provision or right (or of any other provision or right hereof whether of a similar or dissimilar nature) unless such party expressly waives such provision or right in writing.

17.5.   PARTIAL INVALIDITY.

If any term, provision, covenant, or condition of this Agreement, or any application thereof, should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all provisions, covenants and conditions of this Agreement, and all applications thereof, not held invalid, void or unenforceable, shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby.

17.6.   ATTORNEYS' FEES.

In the event any action is commenced by either party against the other in connection herewith (including any action to lift a stay or other bankruptcy proceeding), the prevailing party shall be entitled to payment from the other party or parties of the prevailing party's costs and expenses, including reasonable attorneys' fees, as determined by the court.

EXHIBIT "1"

17.7.   ENTIRE AGREEMENT.

This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained herein and supersedes all prior representations, agreements and understandings of the parties, including any "letter of intent," "letter of understanding," or similar documents.  No addition to or modification of this Agreement shall be binding unless executed in writing by the parties hereto.

17.8.   TIME OF ESSENCE.

Time is of the essence in the performance of the parties' respective obligations set forth in this Agreement and all the terms, provisions, covenants, and conditions hereof.

17.9.   RECORDATION OF AGREEMENT.

Each party covenants and agrees that it will not cause this Agreement or a memorandum thereof to become of record in any public office.  In the event either party violates this provision, the other party may, at its election and in addition to any other remedies it may have, terminate this Agreement and the violating party shall pay the costs of cancellation of the Escrow Holder.

17.10.   COUNTERPARTS.

This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall be an original, but all such counterparts shall constitute one and the same Agreement.  Any signature page of this Agreement may be detached from any counterpart without impairing the legal effect of any signatures thereon, and may be attached to another counterpart, identical in form thereto, but having attached to it one or more additional signature pages.  To facilitate execution of this Agreement, the parties may execute and exchange by telephone facsimile counterparts of the signature pages.

17.11.   HEADINGS.

The headings of the various paragraphs of this Agreement have been inserted only for convenience, and shall not be deemed in any manner to modify or limit any of the provisions of this Agreement, or be used in any manner in the interpretation of this Agreement.

17.12.   INTERPRETATION.

Whenever the context so requires, all words used in the singular shall be construed to have been used in the plural (and vice versa), each gender shall be construed to include any other genders, and the word "person" shall be construed to include a natural person, a corporation, a firm, a partnership, a joint venture, a trust, an estate, or any other entity.

17.13.   DATES.

The term "business day" shall mean calendar days other than a Saturday, Sunday or national or State of Nevada holiday.  If any dates hereunder for the taking of some action or the expiration of some time period fall on a day that is not a business day, such date shall be the next following business day.

17.14.   SUBMISSION.

The submission of this Agreement for examination and/or execution hereof does not constitute a reservation of or option for the Property and this Agreement becomes effective only upon execution and delivery thereof by Buyer and Seller.

EXHIBIT "1"

17.15.  JURY TRIAL WAIVER.

THE PARTIES KNOWINGLY AND FREELY WAIVE ANY RIGHT THEY MAY HAVE TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT.  THE PARTIES ACKNOWLEDGE AND REPRESENT THAT THE RIGHT TO A JURY TRIAL IS AN IMPORTANT RIGHT, THAT EACH HAS REVIEWED THIS WAIVER WITH LEGAL COUNSEL OF ITS OWN CHOOSING, OR HAS HAD AN OPPORTUNITY TO DO SO, THAT THIS PROVISION IS A MATERIAL AND NEGOTIATED TERM OF THIS AGREEMENT, THAT EACH PARTY WOULD NOT ENTER INTO THIS AGREEMENT BUT FOR THE JURY TRIAL WAIVER, AND THAT EACH PROVIDES THIS WAIVER HAVING HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL OF ITS CHOOSING.

_TF_
_____                                         _____
Buyer's Initials                                    Seller's Initials

17.16.  NO INFERENCE.

The parties agree that all parties participated in the negotiation and drafting of this Agreement and that this Agreement shall not be construed against any party as a result of such party's role in the drafting of this Agreement.

17.17.  FURTHER ASSURANCES.

IN ADDITION TO THE OBLIGATIONS REQUIRED TO BE PERFORMED HEREUNDER BY SELLER AND BUYER AT OR PRIOR TO CLOSING, EACH PARTY, FROM AND AFTER CLOSING, SHALL EXECUTE, ACKNOWLEDGE AND/OR DELIVER SUCH OTHER INSTRUMENTS AS MAY BE REASONABLY REQUESTED IN ORDER TO EFFECTUATE THE PURPOSES OF THIS AGREEMENT, PROVIDED SAID ACTION DOES NOT IMPOSE ADDITIONAL LIABILITY OR OBLIGATIONS ON SELLER OR BUYER BEYOND THAT IMPOSED BY THIS AGREEMENT OR THE DOCUMENTS DELIVERED AT CLOSING.

IN WITNESS WHEREOF, Buyer and Seller have executed this Agreement as of the day and year first above written.


Seller:                                             Buyer:

Mt Yohai, LLC, a Delaware limited
liability company, debtor-in-possession             in U.S. Bankruptcy Court
Case No. 8:16-bk-15157-CB

By:     Baylor Holding, LLC                          By:     _____
Its:    Manager                                      Name:   Thomas Fanning
                                                     Title:  _____
        By:     _____
        Name:   Jeffrey Yohai
        Title:  Managing Member

EXHIBIT "1"

This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall be an original but all such counterparts shall constitute but one and the same Agreement. Any signature page of this Agreement may be detached from any counterpart without impairing the legal effect of any signatures thereon, and may be attached to another counterpart, identical in form thereto, but having attached to it one or more additional signature pages. To facilitate execution of this Agreement, the parties may execute and exchange by telephone facsimile counterparts of the signature pages.

17.11. HEADINGS.

The headings of the various paragraphs of this Agreement have been inserted only for convenience, and shall not be deemed in any manner to modify or limit any of the provisions of this Agreement, or be used in any manner in the interpretation of this Agreement.

17.12. INTERPRETATION.

Whenever the context so requires, all words used in the singular shall be construed to have been used in the plural (and vice versa), each gender shall be construed to include any other genders, and the word "person" shall be construed to include a natural person, a corporation, a firm, a partnership, a joint venture, a trust, an estate, or any other entity.

17.13. DATES.

The term "business day" shall mean calendar days other than a Saturday, Sunday or national or State of Nevada holiday. If any dates hereunder for the taking of some action or the expiration of some time period fall on a day that is not a business day, such date shall be the next following business day.

17.14. SUBMISSION.

The submission of this Agreement for examination and/or execution hereof does not constitute a reservation of or option for the Property and this Agreement becomes effective only upon execution and delivery thereof by Buyer and Seller.

17.15. JURY TRIAL WAIVER.

THE PARTIES KNOWINGLY AND FREELY WAIVE ANY RIGHT THEY MAY HAVE TO A

JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT. THE PARTIES ACKNOWLEDGE AND REPRESENT THAT THE RIGHT TO A JURY TRIAL IS AN IMPORTANT RIGHT, THAT EACH HAS REVIEWED THIS WAIVER WITH LEGAL COUNSEL OF ITS OWN CHOOSING, OR HAS HAD AN OPPORTUNITY TO DO SO, THAT THIS PROVISION IS A MATERIAL AND NEGOTIATED TERM OF THIS AGREEMENT, THAT EACH PARTY WOULD NOT ENTER INTO THIS AGREEMENT BUT FOR THE JURY TRIAL WAIVER, AND THAT EACH PROVIDES THIS WAIVER HAVING HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL OF ITS CHOOSING.

_____
Buyer's Initials

_____
Seller's Initials

17.16. NO INFERENCE.

The parties agree that all parties participated in the negotiation and drafting of this Agreement and that this Agreement shall not be construed against any party as a result of such party's role in the drafting of this Agreement.

17.17. FURTHER ASSURANCES.

IN ADDITION TO THE OBLIGATIONS REQUIRED TO BE PERFORMED HEREUNDER BY SELLER AND BUYER AT OR PRIOR TO CLOSING, EACH PARTY, FROM AND AFTER CLOSING, SHALL EXECUTE, ACKNOWLEDGE AND/OR DELIVER SUCH OTHER INSTRUMENTS AS MAY BE REASONABLY REQUESTED IN ORDER TO EFFECTUATE THE PURPOSES OF THIS AGREEMENT, PROVIDED SAID ACTION DOES NOT IMPOSE ADDITIONAL LIABILITY OR OBLIGATIONS ON

EXHIBIT 1

IN WITNESS WHEREOF, Buyer and Seller have executed this Agreement as of the day and year first above written.

Seller:                                          Buyer:

Mt Yohai, LLC, a Delaware limited

liability company, debtor-in-possession          in U.S. Bankruptcy Court
Case No. 8:16-bk-15157-CB

By:    Baylor Holding, LLC                       By:

Its:   Manager                                   Name:    Thomas Fanning

                                                 Title:

By:

Name:    Jeffrey Yohai

Title:   Managing Member

## JOINDER BY ESCROW HOLDER

First American Title Company joins this Agreement for the purposes of agreeing to act as Escrow Holder under this Agreement and to confirm that the Opening of Escrow occurred on _____, 2017.

First American Title Company

By:     _____

Name:   _____

Title:  _____

Opening of Escrow:          ___, 2017.

Escrow Number: _____

## JOINDER BY ESCROW HOLDER

      First American Title Company joins this Agreement for the purposes of agreeing to act as Escrow Holder under this Agreement and to confirm that the Opening of Escrow occurred on _____, 2017.

First American Title Company

By: _____
Name: _____
Title: _____

Opening of Escrow: _____, 2017.


Escrow Number: _____

EXHIBIT "1"

EXHIBIT "A"
TO PURCHASE AGREEMENT

DESCRIPTION OF PROPERTY

EXHIBIT "1"

EXHIBIT "B"
TO PURCHASE AGREEMENT

DEED

APN NO.:

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:




MAIL TAX STATEMENTS TO:



_____
(Space above line for Recorder's use)


GRANT BARGAIN AND SALE DEED


     Mt Yohai, LLC, a Delaware limited liability company, "Grantor," does hereby Grant, Bargain, Sell, and Convey to_____, "Grantee," the real property in the County of Los Angeles, State of California (the "Land") described on Exhibit "A" attached hereto and incorporated herein by this reference, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or otherwise appertaining, including water rights of all kinds.

SUBJECT TO:

     1.     Unpaid general taxes for the current fiscal tax year; and

     2.     All covenants, conditions, restrictions, reservations, rights, rights-of-way, and easements recorded against the Land prior to or concurrently with this Deed, and all other matters of record or apparent upon inspection of the Land.

Mt Yohai, LLC, a Delaware limited
liability company, debtor-in-possession
in U.S. Bankruptcy Court
Case No. 8:16-bk-15157-CB

By:     Baylor Holding, LLC
Its:     Manager

     By:  _____
     Name:  Jeffrey Yohai
     Title:  Managing Member

ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF                    )

On _____ before me, _____
(insert name and title of the officer) personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____ (Seal)

1

2

3

## PROOF OF SERVICE OF DOCUMENT

4

5

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 18101 Von Karman Avenue, Suite 1200, Irvine, CA 92612

6

7

8

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF EXECUTED PURCHASE AND SALE AGREEMENT BETWEEN DEBTOR AND THOMAS FANNING, OR HIS ASSIGN IN RELATION TO MOTION AND MOTION FOR ORDER: (1) APPROVING THE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND OTHER INTERESTS IF PURCHASER ACQUIRES REAL PROPERTY IN OTHER PENDING CHAPTER 11 CASE, SUBJECT TO OVERBID; (2) FINDING BUYER IS A GOOD FAITH PURCHASER; AND (3) WAIVING 14-DAY STAY OF FRBP 6004(h)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

9

10

11

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 28, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

12

13

☒        Service information continued on attached page

14

15

16

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) November 28, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒        Service information continued on attached page

17

18

19

20

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) November 28, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

21

- Honorable Catherine Bauer, USBC, 411 West Fourth Street, Santa Ana, CA 92612

22

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

23

| November 28, 2017 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

24

25

26

27

28

1

2    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

3    - **Simon Aron    saron@wrslawyers.com**
     - **Jeffrey W Dulberg    jdulberg@pszjlaw.com**
4    - **Marc C Forsythe    kmurphy@goeforlaw.com,**
       **mforsythe@goeforlaw.com;goeforecf@gmail.com**
5    - **Richard Girgado    rgirgado@counsel.lacounty.gov**
     - **Chad V Haes    chaes@marshackhays.com, ecfmarshackhays@gmail.com**
6    - **Michael J Hauser    michael.hauser@usdoj.gov**
     - **D Edward Hays    ehays@marshackhays.com, ecfmarshackhays@gmail.com**
7    - **James Andrew Hinds    jhinds@jhindslaw.com, mduran@jhindslaw.com**
     - **Scott A Kron    scott@kronandcard.com**
8    - **Marc Y Lazo    mlazo@whbllp.com**
     - **Richard A Marshack    rmarshack@marshackhays.com,**
9      **lbergini@marshackhays.com;ecfmarshackhays@gmail.com**
     - **Paul R Shankman    pshankman@jhindslaw.com, mduran@jhindslaw.com**
10   - **Rachel M Sposato    rsposato@jhindslaw.com, mduran@jhindslaw.com**
     - **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**In re Mt Yohai, LLC**
**USBC Case #8:16-bk-15157-CB**

**Debtor**
Mt Yohai, LLC
3991 MacArthur Blvd., Ste. #125
Newport Beach, CA 92660-3049

**United States Trustee**
United States Trustee
411 West Fourth Street, #7160
Santa Ana, CA 92701-4500

## CREDITORS

Bowery Design and Development
8581 Santa Monica BLVD #204
West Hollywood, CA 90069-4120

California TD Specialists
8190 East Kaiser Blvd
Anaheim, CA 92808-2215

Crest Real Estate, LLC
11150 W. Olympic Blvd., Suite 700
Los Angeles, CA 90064-1825

Genesis Capital Master Fund II, LLC
Attn Lending Department
21650 Oxnard Street
Suite 1700
Woodland Hills, CA 91367-5058

Jessica Manafort
703 Greenleaf
Topanga, CA 90290

Kathleen Manafort
721 Fifth Avenue #43G
New York, NY 10002-2537

Paul Manafort
721 Fifth Avenue #43G
New York, NY 10002-2537

Samara Engineering
9100 S Sepulveda Blvd., Suite 115
Los Angeles, CA 90045-4849

Richard M. Pachulski, Esq.
Jeffrey W. Dulberg, Esq.
PACHULSKI STANG et al
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003

Jeffrey Yohai
30254 Morning View Drive
Malibu, CA 90265

Jeffrey Yohai
Baylor Holding LLC
3991 MacArthur Blvd. #125
Newport Beach, CA 92660

Los Angeles County Tax Collector
PO Box 54018
Los Angeles, CA 90054-0018

Robert L. Gerner III
c/o Sotheby's International Realty
9255 Sunset Blvd., Mezzanine
West Hollywood, CA 90069

Thomas Fanning
8581 Santa Monica Blvd., #204
West Hollywood, CA 90069

LA County Treasurer & Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

Franchise Tax Board
Bankruptcy Section MS A340
PO Box 2952
Sacramento, CA 95812-2952

Robert L. Gerner
1210 Grant Street
Santa Monica, CA 92405

**POC #1 Address for LA County Treasurer**
LA County Treasurer & Tax Collector
PO Box 54110
Los Angeles, CA 90054

**POC #2 Address for FTB**
Franchise Tax Board
PO Box 2952
Sacramento, CA 95812-2952

**POC #3 Address for Genesis Capital**
Jeffrey W. Dulberg, Esq.
Pachulski Stang et al
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

**POC #4 Address for Bowery Design**
Bowery Inv. Group dba Bowery Design
c/o Scott A Kron Esq
Kron & Card, LP
29222 Ranch Viejo Rd #114
San Juan Capistrano, CA 92675

**Request to be added**
Stephen D. Blevit, Esq.
Sidley Austin, LLP
1999 Avenue of the Stars, 17th Fl.
Los Angeles, CA 90067

**Request to be added**
Sophia Daneshgar
1021 Cove Way
Beverly Hills, CA 90210